WOOD, Chief Judge,
dissenting.
This case requires us to return to the topic of “donning and doffing” clothing and equipment for purposes of performing a job — and in particular, to the question whether the time spent in those quaintly-termed activities must be included as work-time for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. The plaintiffs in our case work at a poultry processing plant. Before they may begin their work, which involves evisceration, deboning, and cleaning of the carcasses, plaintiffs must “don” certain outerwear and protective gear. In the middle of the day, at lunchtime, they remove the sanitary gear and wash up. At the end of the lunch break, they suit up again, and at the end of their shift they remove the gear for good, wash up again, and head home. Plaintiffs argue that under both the FLSA and the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq., they are entitled to be compensated for the time they spend putting on and taking off this gear, plus the associated washing-up time.
The majority asserts that cleaning up is not part of the employee’s “work,” but I see no justification for this holding. Section 203(o) refers explicitly to washing; and the employer cannot permit people who work with raw meat to enter the lunchroom without thoroughly washing up. For example, Facility Guidelines for Meat Processing Plants issued by the U.S. De *847 partment of Agriculture specifically identify handwash sinks as “one of the most important steps” for proper sanitation that must be taken in such a plant. See 62 Fed.Reg. 45,028, 45,030 (Aug. 25, 1997), available at www.ncagr.gov/meatpoultry/ pdfiFaeilityGuidelines.pdf, (last visited Mar. 16, 2014). Indeed, the Centers for Disease Control and Prevention warn people who keep live poultry in their backyards to wash their hands any time they touch a bird. See Keeping Backyard Poultry, CenteRS for Disease Conteol and PREVENTION, http://www.cdc.gov/features/ salmonellapoultry/, (last visited Mar. 13, 2014). There is nothing voluntary about the washing process during the middle of the day.
My colleagues reject both of the employees’ claims. They do so by rejecting the long-established “continuous work day” principle that has always governed the FLSA and by resolving disputed facts over the amount of time the donning, doffing, and washing process takes in this particular case. In my view, they have erred as a matter of law, and they have gone beyond the proper appellate role. I therefore dissent.
I begin with the legal framework established by the FLSA, and then I turn to the way I believe it should apply to this workplace. I conclude with a word about the state-law claim.
I
The critical section of the FLSA for present purposes is 29 U.S.C. § 203(o), which was added to the statute in 1947 by the Portal-to-Portal Act, 61 Stat. 84. For convenience, I reproduce it here:
(o) Hours Worked. — In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.
Because section 203(o) permits employers and unions to bargain only over the compensation for time spent changing clothes “at the beginning or end of each workday,” see, e.g., Sandifer v. U.S. Steel Corp., — U.S. -, 134 S.Ct. 870, 880-81, 187 L.Ed.2d 729 (2014), the first question on the table is what the word “workday” means in this context.
This is not a question of first impression for the federal courts. In fact, even though the term “workday” is not defined in the statute, the Department of Labor has defined it in a long-standing regulation, as follows:
(b) “Workday” as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee’s principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period. For example, a rest period or a lunch period is part of the “workday,” and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked. If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his “workday” commences at the time he reports there for work in accordance with the employer’s requirement, even though through a cause beyond the employee’s control, he is not able to com- *848 menee performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday, and section 4 of the Portal Act would not affect its inclusion in hours worked for purposes of the Fair Labor Standards Act.
29 C.F.R. § 790.6(b).
The suggestion that one eight-hour workday can be divided into two four-hour “days” (or maybe four two-hour “days,” if rest breaks are considered) is incompatible with this authoritative definition. The reference in the first sentence of the regulation to “commencement” and “completion” of tasks within one day can mean only that lunch breaks and rest breaks occur within those outer boundaries (as the third sentence explicitly says). Nothing in 29 C.F.R. § 790.6(b) leaves room for the possibility that one might break an eight-hour workday into partial “days” of four hours each (or perhaps even smaller units). It is true that the regulation says that “in general” a workday extends from the commencement to the completion of the employee’s tasks. The majority argues that this qualification is triggered here, when they assert that “there is compelling reason to recognize an exception [to the eight-hour continuous day] in this case.” Ante at 840. I see no reason at all to do so, compelling or otherwise. Indeed, I cannot imagine a workplace that could not operate under two four-hour “days” rather than one continuous eight-hour day. In effect, the majority has held that this regulation is incompatible with the statute. It does so without going through any of the normal analysis that would justify disregard of an administrative agency’s longstanding interpretation of a law that it is charged to implement. I do not see it that way. Because I find nothing unusual about the poultry processing facilities here, I would hold that section 790.6(b) requires us to find that the “workday” here extends from the time the employee reports to work until the time he is free to clock out for the day. Various breaks that may or may not be compensable time occur within those outer boundaries. Because section 203(o) permits employers and unions to bargain over the compensability of time spent changing clothes only “at the beginning or end of each workday,” the most straightforward reading of the statute shows that donning, doffing, and cleaning that occurs in the middle of the workday is not within the ambit of section 203(o )’s exclusion.
The majority’s argument for avoiding section 203(o )’s plain language by breaking a single eight-hour workday into two four-hour days calls into question the applicability of the continuous workday doctrine across the board. Yet the Supreme Court accepted that doctrine in IBP, Inc. v. Alvarez, 546 U.S. 21, 29, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005). Workers must be compensated for time spent doing what might otherwise be non-compensable activities under the Portal-to-Portal Act if those activities occur between the commencement of the employee’s first principal activity and the completion of his last principal activity on any workday and are not otherwise exempt (ie. for a bona fide lunch break). 29 C.F.R. § 790.6(a).
Under the majority’s interpretation, an employer that requires an employee to walk, midday, from one principal work activity to another (perhaps from the sewing room to the steaming room) would be able to render that otherwise compensable time non-compensable by telling the employee that one “workday” ended when he left the sewing room, and a new “workday” started when he entered the steaming room. Such a rule would effectively eliminate the continuous workday concept. I freely accept that Congress could amend section 203(o) tomorrow to reject the continuous *849 workday notion, but it has not done so yet. For FLSA purposes, I agree with the majority only insofar as it holds that the parties are free to bargain about the coverage of donning, doffing, and washing time at the beginning and the end of the full workday.
Looking at the language of section 203(o), and taking into account the definition of “workday” found at 29 C.F.R. § 790.6(b), I would find that the workers are entitled to be paid for time spent donning, doffing, and washing up at any time after they first start working and before they finish their last task of the day. They are thus, in my view, presumptively entitled to be compensated for their lunch break donning, doffing, and cleaning. (I address the possible exception for de minimis activities below.) Because section 203(o) permits employers and unions to bargain only over the compensability of time spent changing clothes “at the beginning or end of each workday,” they cannot bargain away worker compensation for mid-day breaks, whether at lunchtime or at other times. This may help the workers, as plaintiffs here believe, or it may ultimately reduce their power at the bargaining table, because it gives them one less chip to play, as my colleagues predict. But this is the system that the FLSA creates, and the workers are entitled to enforce their rights under existing law.
II
My second objection to the majority’s opinion focuses on its alternative holding, namely, that even if section 203(o )’s exclusion does not apply to mealtime donning and doffing, the time spent engaged in those activities in this case is de minimis and thus non-compensable at the threshold. This position brushes past serious disputes of fact about how the donning, doffing, and washing actually take place in this workplace. I am startled, to say the least, to think that an appellate court would resolve such a dispute based on a post-argument experiment conducted in chambers by a judge. Ante at 841-42. As the majority concedes, this cannot be considered as evidence in the case. To the extent (even slight) that the court is relying on this experiment to resolve a disputed issue of fact, I believe that it has strayed beyond the boundaries established by Federal Rule of Civil Procedure 56. (This is quite different, it seems to me, from including an illustrative photograph whose accuracy presumably could not be contested.) I note as well that this experiment proceeded on the assumption that washing is not essential for workers handling raw poultry — an assumption I have already shown to be inconsistent with government regulations for hygiene within a meat processing plant. Finally, there are two other problems with the majority’s approach: it runs afoul of the statutory definition of a bona fide lunch break, and it fails to give effect to the Supreme Court’s recent rejection of de minimis analysis in the donning and doffing context.
The record here leaves no doubt that the parties do not agree on the central question of the amount of time it takes at these workplaces to don and doff the required clothing and equipment and to wash up. The plaintiffs allege that it typically takes workers from 10 to 15 minutes to don their equipment at the beginning of the workday. They further contend that the sanitary equipment must be put on and removed in an area isolated from the production floor, in order to protect the raw poultry from contamination. The need to go to the approved area adds to the time required to complete the donning and doffing activities. The employer paints a much different picture — one that the majority has decided to credit, despite *850 the fact that this case reaches us on an appeal from a grant of summary judgment. The employer estimates that everything can be accomplished in one or two minutes.
This is as material a dispute of fact as I can imagine, and thus one that should have prevented disposition on summary judgment. See Fed.R.CivP. 56(a). And it is a factual issue about which the employees have personal experience; no one can complain that their affidavits about the time these activities require lack proper foundation. In order to choose between the employees’ and the employer’s estimates of the necessary time, one needs to know additional facts about what exactly the employer requires the workers to do. If, as plaintiffs allege, the necessary doffing before lunchtime and at the end of the day includes not merely removing the equipment, but also washing and stowing the tools and equipment, then it is easy to see how more time might be necessary than would be needed for a simple change of clothes. The Centers for Disease Control states that “it is not unusual for raw poultry from any producer to have Salmonella bacteria.” Salmonella and Chicken: What You Should Know and What You Can Do, CenteRS FOR Disease Control and Prevention, http://www.cdc.gov/features/ salmonella-chicken/ (last visited Mar. 16, 2014). Salmonella, it adds, is “an important cause of human illness in the United States and often linked to poultry”; some of that Salmonella is a multidrug-resistant strain. Id. It is essential for the health of the worker, her fellow workers, and the consumers who will consume the poultry products that a person who has been steeped in raw poultry viscera for hours wash herself off before eating. (For a chilling account of what can happen when proper sanitation standards in a comparable industry (turkey processing) are not followed, see Dan Barry, The ‘Boys’ in the Bunkhouse, N.Y. Times Mag., Mar. 9, 2014, available at http://www.n31times.com/inter active/2014/03/09/us/theboys-in-the-bunkhouse.html (last visited Mar. 16, 2014).) In short, the amount of time at issue is a question that must be developed at trial; no amount of common sense, internet research, or personal experience can substitute for that.
Second, as I have noted, the continuous workday doctrine provides that workers must be compensated for time they spend doing what might otherwise be non com-pensable activities if those activities occur between the commencement of the worker’s first principal activity and the completion of her last principal activity on any workday. See 29 C.F.R. § 790.6(a). For example, “[r]est periods of short duration, running from 5 minutes to about 20 minutes, ... must be counted as hours worked.” 29 C.F.R. § 785.18. In contrast to a rest period, a bona fide lunch period does not count as “hours worked” and thus an employer does not have to pay workers for that time. This makes the distinction between a rest period of “short duration” and a bona fide lunch period crucial. In order to qualify as a bona fide meal period, “[t]he employee must be completely relieved from duty for the purposes of eating regular meals.” 29 C.F.R. § 785.19(a). The regulation recognizes that “ordinarily” 30 minutes or more is long enough for a bona fide meal period. If, however, workers are required to walk to a donning and doffing area, take off their outerwear and equipment, and wash off raw chicken and blood; then go eat lunch; and then return to the designated area, and suit up again, all during their 30-minute “meal break,” then those workers obviously do not have a full 30 minutes in which to get their lunch and eat.
If the meal break is actually shorter than 30 minutes, the employer risks a find *851 ing that it has not provided a bona fide meal period at all, for purposes of 29 C.F.R. § 785.19(a). That would render the entire break period compensable, pursuant to 29 C.F.R. § 785.18. Granted, a period shorter than 30 minutes “may be long enough under special conditions,” but the statute does not specify what those special circumstances might be. This, too, is a matter that can be resolved only with a more complete factual record.
As I read the Supreme Court’s decision in Sandifer, this court is not entitled to dismiss lunchtime washing, donning, and doffing of clothing as “de minimis.” See 134 S.Ct. at 880 (“We doubt that the de minimis doctrine can properly be applied to the present case.... [D]e minimis non curat lex is not Latin for close enough for government work”) As the Court recognized, § 203(o) is “all about trifles — the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs.” Id. at 880. Sandifer’s rejection of the de minimis doctrine in this context established an important point: while putting on clothes and washing may take very little time, courts should recognize that § 203(o) was designed to treat that time specially if it occurred at the beginning or end of the workday — that is, there is a default rule that classifies it as time required for the job, but the parties are permitted to vary that rule to make it noncompensable under a collective bargaining agreement. If the same activities occur in the middle of the day, the default rule stands and no such exemption is permitted.
The Court’s rejection of the de minimis concept in the clothing and washing context sheds light on the test the Court did adopt, in an effort to spare federal judges from becoming “time-study professionals.” Id. at 880. The pertinent question, the Court held, “is whether the period at issue can, on the whole, be fairly characterized as ‘time spent in changing clothes or washing.’ ” Id. at 880. The importance of the conclusion is more nuanced than my colleagues imply, however. If one is talking about the beginning or end of the workday, whether the period meets the “on the whole” test changes only whether employers and unions can bargain about the extra minutes; it does not make the period categorically non-compensable. Either the time is “on the whole” spent changing clothes or washing, in which case unions can bargain away compensation for that time, or the time “on the whole” is spent otherwise, in which case § 203(o) does not apply and the right to compensation for that time rises or falls based on other criteria.
Even if the idea of a time “as a whole” is functionally equivalent to de minimis analysis (and I have a hard time coming to that conclusion in light of the Supreme Court’s discussion), I am troubled by the majority’s assumption that the amounts of time spent here fall below that threshold. We should not evaluate each day, or part of a day, separately. Instead, we should aggregate the amount of time the workers spend donning, doffing, and cleaning — time that otherwise would be compensable. Accord Perez v. Mountaire Farms, Inc., 650 F.3d 350, 373 (4th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1634, 182 L.Ed.2d 246, (2012) (“In applying the de minimis rule, we consider the aggregate amount of time for which the employees are otherwise legally entitled to compensation”) (citing DOL Wage & Adv. Mem. No.2006-2 n. 1 (May 31, 2006)). If, for example, it takes an average employee four minutes at the beginning of the lunch break to remove the special gear and to wash up, and then two minutes at the end of the break to suit up again, that amounts to six minutes (or 0.1 hour) out of the 30- *852 minute break (that is, 20% of the break). (Note that my example does not come close to assuming that these activities will consume 15 minutes out of a 30-minute lunch break. See ante at 842. But they do take up real time.) Multiply this by the five days in an ordinary work-week and one has a half-hour of time at stake. I cannot dismiss this as inconsequential, given the realities that face most people whose jobs put them within the group protected by the FLSA. I also see nothing in the statute that would prevent the employer from crediting employees with a reasonable time for these activities. There is no more reason to assume that each employee’s donning and doffing time would need to be measured individually on a daily basis than there is to think that any other donning and doffing time must be handled that way. The use of an average period would eliminate any benefit from dawdling. It would be easy enough for an employer to specify that the required time on the floor of the plant ends three or four minutes before the lunch break, and starts up again when the employee begins to re-don his gear, if the employer wanted to avoid any overtime liability.
I would find that these employees have the right in principle to compensation for their donning, doffing, and cleaning time during their workday (and in particular before and after lunch), and I would remand for trial to determine how much time these activities actually consume. Given the limitations of the FLSA, I would affirm to the extent that the employees pursue a federal right to exclude donning and doffing at the beginning and end of the workday, because section 203(o) permits the parties to make that a subject of collective bargaining.
Ill
Last, I turn to the Illinois Minimum Wage Act. As the amicus curiae brief filed by the State of Illinois stresses, Illinois has adopted a broader approach than the FLSA to the definition of “hours worked.” The Illinois Minimum Wage Act has been interpreted authoritatively by the Illinois Department of Labor to require compensation for “all the time an employee is required to be on duty, or on the employer’s premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer.” Ill. Admin. Code, tit. 56, § 210.110. This definition is quite similar to the one the U.S. Supreme Court endorsed in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). There the Supreme Court defined the “statutory workweek” to “include! ] all time during which an employee is necessarily required to be on the employer’s premises, on duty or at a prescribed workplace.” 328 U.S. at 690-91, 66 S.Ct. 1187 (1946). While Congress found the Supreme Court’s interpretation too broad, and so amended the FLSA in 1947 to create certain exceptions, the Illinois state regime has never abandoned that rule. If the FLSA preempted contrary state laws, the fact that Illinois has chosen a different rule might be of no importance. But, to the contrary, the FLSA includes a savings clause that gives precedence to state laws with more generous compensation schemes. 29 U.S.C. § 218(a); see Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 428-30 (7th Cir.2010).
The result my colleagues have reached cannot be squared with the plain language of the Illinois law. In direct contradiction to the views of the Illinois Attorney General, they have found that Illinois law must be read the same way as the federal law. The savings clause, however, tells us that Congress has not required this result, and the Illinois Department of Labor has made it clear that it has not chosen to follow *853 federal law in this respect. This matter is of sufficiently great importance to the state that the Attorney General has asked this court to certify the question to the Supreme Court of Illinois, if we were to find any doubt about the matter. Rather than resolve this issue, I would grant the Attorney General’s request. The question is an important one for both employers and workers in the state, and it thus stands a good chance of meeting the certification requirements set out in Ill. Sup.Ct. R. 20. I would thus submit a proper request to that court under Seventh Circuit Local Rule 52.
í¡í % >]i # ífc
In conclusion, I respectfully dissent from the majority’s decision to affirm the judgment of the district court. As I read the Illinois Minimum Wage Act, plaintiffs are entitled to compensation for their donning, doffing, and washing time both at the beginning and end of the workday and during their lunch break. The FLSA independently protects their right to compensation for the lunch-break time. I would remand this case for fact-finding on exactly how much time this is.