**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION NEAL HEIMBACH; KAREN SALASKY, <br><br> Appellants <br><br><br> v. <br><br><br> AMAZON.COM, INC.; AMAZON.COM.DEDC, LLC; INTEGRITY STAFFING SOLUTIONS, INC., <br><br> Appellees | : No. 43 EAP 2019 <br> : <br> : <br> : <br> : <br> : Petition for Certification of Question <br> : of Law from the United States Court <br> : of Appeals for the Sixth Circuit <br> : <br> : <br> : <br> : <br> : ARGUED: September 17, 2020 <br> : <br> : <br> : <br> : <br> : <br> : |

## OPINION

**JUSTICE TODD**                                        **DECIDED: July 21, 2021**

We answer herein two certified questions from the United States Court of Appeals for the Sixth Circuit: (1) whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening is compensable as "hours worked" within the meaning of the Pennsylvania Minimum Wage Act[1] ("PMWA")?; and (2) whether the doctrine of *de minimis non curat lex*,[2] as described in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), applies to bar claims brought under the

---

[1] 43 P.S. §§ 333.101-333.115.

[2] Literally translated, this Latin phrase means: "The law does not concern itself with trifles." Black's Law Dictionary (11th ed. 2019). It is frequently referred to in legal vernacular simply as "*de minimis.*" *Id.* Pursuant to this principle, "courts disregard trivial matters that serve merely to exhaust the court's time." *Bailey v. Zoning Board of Adjustment of the City of Philadelphia*, 810 A.2d 492, 504 n.20 (Pa. 2002).

PMWA?   Our reply to these questions is that time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening constitutes "hours worked" under the PMWA; and there exists no *de minimis* exception to the PMWA.

### I. Factual Background and Procedural History

This case arises out of a class action suit for unpaid wages brought by Appellants Neil Heimbach and Karen Salasky ("Employees") who worked for Appellees (collectively "Amazon") at Amazon's warehouse facility in Pennsylvania.[3]  As summarized by the Sixth Circuit Court of Appeals in its opinion in support of certification:

> The relevant facts are not in dispute.  [Employees] worked at Amazon's "logistics facility/fulfillment center" located in a large warehouse in Breinigsville, Pennsylvania.  [Appellant] Heimbach worked for Amazon while [Appellant] Salasky worked for Integrity Staffing Solutions.  Amazon and Integrity "separately employed hundreds of hourly workers at the Facility."  The workers' duties included "receiving deliveries of merchandise, transporting merchandise to its appropriate location within the Facility, 'picking' merchandise from storage locations, and processing merchandise for shipping."
>
> Hourly employees clocked in and out on time clocks at the beginning and end of their shifts, respectively.  After clocking out at the end of their shifts, employees were required to undergo antitheft security screening, which included metal detectors, searches of bags and other personal items, and "a secondary screening process if the metal detector's alarm sounded."[4] While [Employees] and [Amazon] disagree as to

---

[3] Appellees are Amazon.com, Inc., Amazon.com.DEDC, LLC, and Integrity Staffing Solutions.  The parties' current designations as Appellant and Appellee were proposed by the Sixth Circuit Court of Appeals and adopted by our Court.

[4]  Amazon now contends to our Court that employees were not required to undergo security screenings because they had the option of using so-called "express lanes" if they left behind personal items before they entered the facility, *see* Amazon's Brief at 29-31, a contention which Employees dispute, *see* Employees' Reply Brief at 3-5.  Regardless, the questions certified to us by the Sixth Circuit Court of Appeals presume that these screenings were required of all employees, as that was the factual determination of the district court which considered this matter on Amazon's motion for summary judgment, *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) & Wage & Hour*

the amount of time this screening took on average, no party disputes that [Amazon] did not compensate [their] employees for the time it took to wait in line for and undergo these security screenings.[5]

*In re Amazon.com, Inc.*, 942 F.3d 297, 299 (6th Cir. 2019) (footnote omitted).

On October 30, 2013, Employees commenced their class action lawsuit against Amazon in the Philadelphia County Court of Common Pleas, asserting that they were entitled to compensation for their unpaid time spent in the security screening process under the PMWA. On November 1, 2013, Amazon successfully had the action removed to the United States District Court for the Eastern District of Pennsylvania. Thereafter, this suit was consolidated by the United States Judicial Panel on Multidistrict Litigation in the Western District of Kentucky with other similar class actions brought in other states, such as Kentucky, California, Arizona, and Nevada, under those states' minimum wage laws, as well as combined with actions brought under the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, as amended by the federal Portal to Portal Act of 1947 ("PTPA"), *id.* §§ 251-262. The federal FLSA requires, subject to certain exceptions not relevant here, that an employer "pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

---

*Litigation*, 3:14-CV-204-DJH, 2018 WL 4148856, *1 (W.D. Ky. Aug. 30, 2018), a conclusion accepted by the Sixth Circuit Court of Appeals, *In re Amazon.com, Inc., infra*, 942 F.3d at 299. In answering these certified questions, we cannot disturb those tribunals' findings in this regard. *See* Pa.R.A.P. 3341(c) (specifying that our Court "shall not accept certification unless all facts material to the question of law to be determined are undisputed").

[5] According to Employees, for the time period at issue in their underlying class action suit – September 5, 2010 to August 8, 2015 – the total amount of uncompensated time Heimbach and Salasky spent undergoing mandatory screenings was 67.75 hours and 9.46 hours, respectively, and the uncompensated time spent by all employees who were class members was 205,725 hours. Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion in *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) & Wage & Hour Litigation*, 2018 WL 4148856, at *20-21 (R.R. at 221a-222a).

employed in an enterprise engaged in commerce or in the production of goods for commerce," a statutorily specified hourly wage. *Id.* § 206.

Once transferred to the District Court for the Western District of Kentucky, the case proceeded through the discovery phase, and, upon completion of this process, Amazon filed a motion for summary judgment. During the pendency of these proceedings, on December 9, 2014, the United States Supreme Court issued its decision in *Integrity Staffing Solutions v. Busk*, 574 U.S. 27 (2014).

In *Busk*, the high Court ruled that time spent by Amazon warehouse workers in Nevada going through the same security screenings the employees in the present case were subjected to was not compensable under the federal FLSA. In its opinion, the high Court noted that when the FLSA was first enacted in 1938 it contained no definition of the terms "work" or "workweek." The court observed that, in its prior decision of *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680 (1946), when confronted with the question of whether employees of a sprawling pottery plant were entitled to compensation under the FLSA for the time they spent walking from the time clock where they punched in to their workbenches, and back again when they punched out, the Court ruled that they were entitled to compensation, because such activities met the FLSA's definition of "working time" – that is, they "involved 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Busk*, 574 U.S. at 31 (quoting *Anderson*, 328 U.S. at 691-92).[6]

---

[6] As is relevant to the second question which has been certified to us, in *Anderson*, the high Court also recognized that the application of a "*de minimis* rule" might have been appropriate "where the minimum walking time is such as to be negligible." 328 U.S. at 692. The Court observed that, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the

The high Court recounted that the *Anderson* decision met with swift and intense opposition due to an ensuing flood of claims by employees for this type of unpaid time, and, in response, Congress enacted the federal PTPA, Section 254 of which provides, in relevant part:

**(a) Activities not compensable**

Except as provided in subsection (b) [where compensation is mandated by contract or custom], no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938 . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947--

> **(1)** walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> **(2)** activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . . .

29 U.S.C. § 254(a).

Thus, in the aftermath of the enactment of the federal PTPA, "activities which are preliminary to or postliminary to" a worker's principal activity or activities were non-compensable under the FLSA. *Id.* § 254(2). The high Court noted that it previously interpreted the term "principal activities" as including "all activities which are an 'integral and indispensable part of the principal activities'" of the employee, those "that an

policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* This aspect of the *Anderson* decision is discussed more fully *infra*.

employee is employed to perform." 574 U.S. at 33. Hence, in its view, an employee activity, even if required by the employer, does not fall within the purview of the federal FLSA, as amended by the federal PTPA, unless the activity is an "intrinsic element" of the employees' principal duties, and "one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

The high Court determined that the security screenings were not the principal activity which the warehouse workers were employed to perform – which was to remove products from warehouse shelves and to pack and ship them to customers – nor did it deem the screenings "integral and indispensable" to those principal activities. Consequently, the high Court ruled that the screenings were not compensable under the FLSA. *Id.* at 35.

Because of the *Busk* decision, the district court herein dismissed the cases before it which were founded on the federal FLSA. The court then considered whether *Busk* also required the dismissal of Employees' case which was based solely on the PMWA, as well as those cases which were brought under other state minimum wage statutes. The district court observed that the Pennsylvania legislature enacted the PMWA in 1968, 21 years after the federal PTPA was enacted by Congress, and, thus, was aware of it. Hence, in the court's view, "[i]f the Pennsylvania legislature had intended to expose employers to liability foreclosed by the [PTPA], 'one may reasonably assume it would have done so affirmatively.'" *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) & Wage & Hour Litigation*, *supra*, 2018 WL 4148856, at *3 (quoting *Vance v. Amazon*, 852 F.3d 601 (6th Cir. 2017)).

Because the PMWA contained no such affirmative language excluding the application of the federal PTPA to its interpretation, the district court viewed it proper to consider United States Supreme Court precedent interpreting the PTPA, such as *Busk*,

when interpreting the PMWA. Consequently, the district court ruled that *Busk* was controlling of the employees' right to compensation under the PMWA for the time spent undergoing security screenings and that, in the aftermath of that decision, Employees "no longer have a viable claim under Pennsylvania law." *Id.*

Employees appealed to the Court of Appeals for the Sixth Circuit and, thereafter, petitioned that court to certify to our Court two controlling questions of Pennsylvania law: whether the security screenings at issue were compensable as "hours worked" under the PMWA, and whether Pennsylvania law recognized a *de minimis* exception to the PMWA?[7] The court of appeals granted the petition, noting that our Court "has never squarely addressed" the issue of whether the PMWA incorporated the federal PTPA. *In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) & Wage & Hour Litigation*, 942 F.3d 297, 301 (6th Cir. 2019). Likewise, the court observed that, with respect to the *de minimis* question, apart from a non-precedential dissenting opinion written by former Justice McCaffery and joined by this author, *see Caierelli v. Sears Roebuck*, 46 A.3d 643 (Pa. 2012) (McCaffery, J. dissenting) (observing that Pennsylvania never statutorily adopted the federal PTPA, nor recognized a *de minimis* exception to the PMWA), there was no Pennsylvania case which addressed whether the *de minimis* doctrine has any application in interpreting the PMWA. *In re Amazon.com, Inc.,* 942 F.3d at 304.

We granted certification to consider the following two questions, as phrased by the court of appeals:

> (1) Is time spent on an employer's premises waiting to undergo and undergoing mandatory security screening compensable as "hours worked" within the meaning of the [PWMA]?

---

[7] This latter question was not addressed by the district court, given its ruling that time spent by employees undergoing security screenings was non-compensable under the PMWA.

(2) Does the doctrine of *de minimis non curat lex*, as described in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) and *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 134 S.Ct. 870, 187 L.Ed.2d 729 (2014), apply to bar claims brought under the [PWMA]?

*In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) & Wage & Hour Litigation*, 222 A.3d 747 (Pa. 2019) (order).

## II.  Meaning of "hours worked" under the PMWA

### A.  Arguments

We turn to the first certified question before us:  whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening is compensable as "hours worked" under the PMWA.  Employees argue that, in determining whether their time spent in undergoing mandatory security screenings is compensable under the PMWA, the principal regulation defining "hours worked," 34 Pa. Code § 231.1, promulgated by the Pennsylvania Secretary of Labor and Industry, governs the resolution of this question.  Section 231.1 provides:

> *Hours worked*--The term includes time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1

Employees proffer that this regulation must be interpreted in accordance with the plain meaning of its terms.  They contend the regulation, by its express language, requires that employees be compensated for all "hours worked," defined as "time during which an

employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." Employees' Brief at 13 (quoting 34 Pa. Code § 231.1). The regulation exempts meal breaks and "time spent on the premises of the employer for the convenience of the employee." *Id.* Employees assert that they need not meet all of these criteria to establish "hours worked"; rather, time which fits into any one of these enumerated conditions will suffice.

Employees contend that the time they are required to undergo these security screenings by Amazon, which is a mandatory condition of employment, constitutes time they are "required by the employer to be on the premises." *Id.* at 16. Employees assert that they simply have no option to avoid the screenings before they leave the premises which constitutes their workplace — the warehouse facility.

Employees additionally argue that they meet the second criterion for hours worked: that they are "on duty" when subjected to the screenings. They reason that "duty" must be construed in accordance with its plain meaning, *i.e.*, "a legal obligation that is owed or due to another and that needs to be satisfied." *Id.* (quoting Black's Law Dictionary 580 (9th ed. 2009)). Here, Employees contend that, because the screenings were obligatory and occurred on Amazon's premises, they had an absolute duty to participate in them. Employees further assert that they meet the third criteria of the regulation for hours worked — that they were required by Amazon to "be at the prescribed work place," given that they were required to remain at the warehouse until the security screenings were completed. *Id.* at 18.

Employees also argue that neither the "meal break" nor "employee convenience" exceptions apply to excuse Amazon's obligations to pay them for hours worked, as plainly

they were not taking a break during their shift to eat, nor were these mandatory screenings done for *their* convenience; rather, they assert they were done for Amazon's. *Id.* at 18-19.

Employees proffer that a plain language analysis is all that is needed for this Court to answer this certified question; nevertheless, additionally, they argue that the legislative history and public policy behind these provisions support their position. Employees highlight that in *Chevalier v. General Nutrition Centers, Inc.*, 220 A.3d 1038, 1055 (Pa. 2019) (refusing to interpret the PMWA as permitting the use of a "flexible work week," as explicitly adopted in the federal FLSA's regulations, for purposes of computing overtime wages owed to employees), we recently reaffirmed that the PMWA manifests a strong public policy to protect employees and to use the Commonwealth's police power to increase employees' wages. Consistent with these objectives, Employees maintain that both the PMWA and its regulations must be given a liberal construction as they are remedial in nature, and, thus, should be construed in their favor.

Employees stress that the federal PTPA's restrictions on compensable time relied on by the high court in *Busk* have no application to the interpretation of 34 Pa. Code § 231.1, given that the federal FLSA merely provides a minimum floor for the protection of workers' wages, and, as our Court emphasized in *Bayada Nurses v. Commonwealth Department of Labor and Industry*, 8 A.3d 866 (Pa. 2010) (validating Pennsylvania Labor Department regulation limiting the exemption to the PMWA's requirement that domestic workers be paid the minimum wage and overtime rate to those situations where the workers were paid directly by a householder who employs them, even though regulation was narrower than the exemption provided by the federal FLSA, inasmuch as that statute does not control the interpretation of the PMWA), states may afford their workers greater protections under their own laws.

Employees maintain that, in accordance with these principles, the limitations on the federal PTPA amendments to the FLSA do not restrict their rights under the PMWA, which provides more expansive protection. Employees underscore that the General Assembly could have incorporated the federal PTPA limitations when it enacted the PMWA in 1968 and amended it over the intervening years; however, it did not, and Employees urge our Court not to judicially engraft such restrictions.[8]

---

[8] Pennsylvania Attorney General Josh Shapiro has filed an *amicus* brief in support of Employees. The Attorney General highlights that when the legislature adopted the PMWA in 1968 it was aware of the federal PTPA, but pointedly did not include its limitations in our wage and hour laws, which he considers a deliberate rejection by that body of the PTPA's restrictions. He views such a rejection as consistent with the general objective of the PMWA which is to provide Pennsylvania workers with greater minimum wage and overtime protections than those afforded by the federal FLSA. Attorney General Shapiro also notes that, when the General Assembly enacted the PMWA, it did not define the term "hours worked," but the Bureau of Labor and Industry, which has the responsibility of enforcing the PMWA, did so in 1977 when it promulgated 34 Pa. Code § 231.1. In that regulation, the Bureau chose to use the pre-PTPA definition of "hours worked" which the United States Supreme Court had adopted in 1946 under the FLSA in *Anderson*, but, significantly, the regulation did not adopt any of the exclusions of the PTPA. The Attorney General emphasizes that the language of the PMWA is "materially distinct" from the FLSA as amended by the PTPA in this and other respects, such as the definitions of employer, employee, and wages which has resulted in courts such as this one diverging from federal courts' interpretations of similar terms in the FLSA in decisions such as *Chevalier* and *Bayada,* Attorney General's Brief at 9-10. The Attorney General views these past distinct interpretations of the PMWA to be reflective of the differing objectives of the two pieces of legislation and, in this instance, to weigh heavily against deferring to the high Court's decision in *Busk* when interpreting the PMWA in regards to the question of the employees' right to compensation thereunder for these security screenings.

Two labor unions, the AFL-CIO and SEIU, have also filed a joint *amicus* brief urging our Court not to interpret the PMWA in accordance with the federal FLSA and the United States Supreme Court decision in *Busk*. They remind that our Court has consistently recognized, in decisions such as *Chevalie*r and *Bayada*, the strong public policy in the PMWA to advance the welfare of workers and to improve the working conditions of employees, and they argue that there is no compelling reason to undermine that commitment in this case. The unions emphasize that, were we to engraft the federal PTPA's restrictions into Pennsylvania law, we would be, in essence, sanctioning what it characterizes as the growing practice by employers of "wage theft" by forcing employees to work "off-the-clock" without pay. AFL-CIO-SEIU Brief at 18-19 (citing analysis of wage and hour law violations compiled by the United States Department of Labor estimating

Amazon responds by asserting that the definition of "hours worked" in Section 231.1 is not controlling; rather, Amazon focuses on the PMWA's overtime provisions, found at 43 P.S. § 333.104(c), which require payment of "one and one-half time the employe's regular rate" of compensation for all hours in excess of 40 worked during a "workweek." Amazon's Brief at 11 (quoting 43 P.S. § 333.104(c)). Amazon contends that, in order to determine the obligation of an employer such as itself to pay overtime, it is "essential to calculate each employe's 'hours in a workweek.'" *Id.* Amazon argues that, applying principles of statutory construction, time spent waiting in line at the security checkpoint should not be considered to constitute part of an employees' workweek because, according to the common meaning of "workweek," that period of time means all hours spent working. Amazon avers that, a "common-sense" definition of the concept of a workweek, which the *Busk* decision supports, does not include time spent walking out of a building, as Employees are only paid for their labor – to pack boxes, but not to stand at a security checkpoint, which does not involve labor or toil. *Id.* at 13-14.

Amazon suggests we should construe the PMWA's definition of overtime consistent with how it is defined in the federal FLSA, which regards working time as time spent actually laboring or working for the employer. Amazon argues that, as a general matter, our Court should construe Pennsylvania statutes which parallel federal statutes in language and terminology in a similar manner. In this regard, Amazon argues that our Court has endorsed the proposition that the PMWA mirrors the federal FLSA in *Commonwealth, Bureau of Labor Law Compliance v. Stuber*, wherein we affirmed a decision of the Commonwealth Court on the basis of its opinion which reached that conclusion. *See Commonwealth, Bureau of Labor Law Compliance v. Stuber*, 822 A.2d

that 257,204 Pennsylvania workers are not paid for work which occurs before and after their shifts). *Amici* contend that practice most seriously affects low-wage workers.

870, 873 (Pa. Cmwlth. 2003) (finding that, because the FLSA and the PMWA have "identity of purpose" and define the terms "'employ,' 'employer' and 'employee'" in a manner which is "virtually identical for purposes of the case *sub judice*," it was appropriate to adopt the "economic reality test" used by federal courts under the FLSA to determine whether a worker should be classified as an employee or an independent contractor under the PMWA), *affirmed*, 859 A.2d 1253 (Pa. 2004)). Amazon reasons that, consistent with the rationale of *Stuber*, the PMWA should be interpreted by our Court in this instance in a parallel fashion as the high Court interpreted the federal FLSA in *Busk*, because there is no indication that the General Assembly indicated the concept of "work" should be treated under the PMWA in a manner differently than the manner in which it is by the FLSA.

Amazon acknowledges our Court's decisions in *Chevalier* and *Bayada*, but views those decisions as standing for the general proposition that the PMWA should be construed differently from the federal FLSA only whenever the language of the PMWA differs. Amazon contends that, in this instance, those decisions do not compel an interpretative departure, given the similar way in which both statutes require only that an employer such as itself compensate employees for all hours actually spent working.

Amazon avers that, in interpreting the PMWA, we should heed the sentiment of Congress when it enacted the federal PTPA in response to what it perceived as the erroneous judicial interpretation of the FLSA, arguing that, by the time our legislature enacted the PMWA in 1968, the concepts embodied in the PTPA were already firmly embedded in federal wage and hour law. Amazon proffers that, had our legislature intended to reject the federal PTPA, it would have done so more explicitly, for example, by repudiating it in the text of the law as did other jurisdictions. Amazon's Brief at 24 (discussing District of Columbia and California). Thus, Amazon asks that we define

"workweek" consistent with *Busk*, and exclude employees' time spent undergoing the security screenings.

With respect to definition of hours worked contained in 34 Pa. Code § 231.1, Amazon asks us to disregard it as, in its view, it does not define the overtime obligations of the PMWA. In Amazon's view, Section 231.1, must be read as governing only the meaning of "hours worked" within the regulations, not the PMWA. Lastly, Amazon argues that to interpret the PMWA more broadly than the federal FLSA with regards to what constitutes a "workweek" would lead to an absurd result – greater overtime benefits through payment for hours when an employee is not actually performing work – which is not what the legislature intended, given that the legislature's objective was to ensure only that employees were rightfully paid for overtime for which they were eligible.[9]

### B. Analysis[10]

As noted, our Court recently reaffirmed the principle that the PMWA manifests this Commonwealth's strong public policy protecting an employee's right to be adequately compensated for all hours for which they work:

> In enacting the PMWA, the General Assembly did not mince words in stating its purpose and fervently indicating its intent to use the Commonwealth's police power to increase employee wages:
>
>> Employe[e]s are employed in some occupations in the Commonwealth of Pennsylvania for wages

---

[9] The National Retail Federation and the Pennsylvania Retailers Association have filed a joint *amicus* brief in support of Amazon. Like Amazon, *see supra* note 4, *Amici* contend the security screenings are the result of Employees' own choice, as, in their view, the screenings could have been avoided if Employees left their personal items outside of the warehouse. Thus, *Amici* assert such activities should not be compensable under the PMWA.

[10] Because this question is one involving statutory interpretation, it presents a pure issue of law, and, thus, our standard of review is *de novo* and our scope of review is plenary. *Freedom Medical Supply, Inc. v. State Farm Fire & Casualty Company*, 131 A.3d 977, 980 (Pa. 2016).

unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation. Employe[e]s employed in such occupations are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and "freedom of contract" as applied to their relations with their employers is illusory. Judged by any reasonable standard, wages in such occupations are often found to bear no relation to the fair value of the services rendered. In the absence of effective minimum fair wage rates for employe[e]s, the depression of wages by some employers constitutes a serious form of unfair competition against other employers, reduces the purchasing power of the workers and threatens the stability of the economy. The evils of unreasonable and unfair wages as they affect some employe[e]s employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employe[e]s employed therein and of the public interest of the community at large.

*Chevalier*, 220 A.3d at 1055 (quoting 43 P.S. § 333.101, "Declaration of policy").

In accordance with the General Assembly's declared policy objective in enacting the PMWA, in both *Chevalier* and *Bayada*, when considering the question of whether an employee was entitled to compensation by an employer under the PMWA, or the manner in which an employee's compensation was to be determined thereunder, we did not follow the interpretation of similarly applicable provisions of the federal FLSA. Our choice not to do so was founded on our recognition that the FLSA, by its own terms, specifically permits states "to enact more beneficial wage and hour laws" than provided by the FLSA. *Bayada*, 8 A.3d at 883 (quoting 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law . . . establishing a minimum wage higher than the minimum wage established under this

chapter or a maximum work week lower than the maximum workweek established under this chapter.")). The FLSA, thus, "establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded." *Chevalier*, 220 A.3d 1055 (internal quotation marks omitted). Consequently, in addressing the question before us – whether the time these employees were required to spend on Amazon's premises as a result of the security screening process constituted "hours worked" – we are not bound by the United States Supreme Court's decision in *Busk*, which addressed the FLSA, and its PTPA amendments.

Moreover, we do not deem *Busk* to be of persuasive value in interpreting the PMWA in this instance, given the stark contrast in the governing provisions of the two laws. As discussed above, the high Court's decision in *Busk* rested on its interpretation of the federal PTPA, which specifically classifies "activities which are preliminary to or postliminary to" a worker's principal activity or activities as non-compensable under the federal FLSA. 29 U.S.C. § 254(2). The high Court determined that these security screenings met the PTPA's statutory criteria for "postliminary activities" and, thus, were excluded from the ambit of the FLSA.

By contrast, Pennsylvania has never statutorily adopted the federal PTPA's specific classification of certain employee activities as being exempt from compensation, even though the PMWA has been amended six times since its initial passage in 1968. Indeed, we perceive the legislature's decision not to adopt the PTPA as wholly consistent with that body's clear and unequivocal policy statement statutorily expressed in the PMWA, that its overarching purpose is to address "[t]he evils of unreasonable and unfair wages," and to ameliorate employer practices which serve to artificially depress those wages. 43 P.S. § 333.101. Given that the federal PTPA was explicitly crafted by Congress to eliminate an employer's obligation under the FLSA to pay wages to its

employees for certain enumerated activities, it operates to reduce the amount of wages an employee is entitled to receive for those activities, even if his employer compels him to perform them. Interpreting the federal PTPA to have been, in effect, made part of the PMWA *sub silentio*, as the district court in this matter concluded it was, is incongruous with our legislature's expressly stated purpose for enacting the PMWA.[11]  Consequently, respecting the Pennsylvania legislature's evident policy choice not to make the PTPA's statutory exclusion of certain employee activities from compensable time a part of the PMWA, we will not judicially engraft such provisions thereon. *See generally In re November 3, 2020 General Election*, 240 A.3d 591, 611 (Pa. 2020) ("It is not our role under our tripartite system of governance to engage in judicial legislation and to rewrite a statute in order to supply terms which are not present therein.").

Accordingly, the PMWA must be interpreted in accordance with its own specific terms, and so, in order to address whether time spent by Employees for security screenings constitutes "hours worked", we must examine the text of the PMWA, as well as the relevant Department of Labor and Industry regulations. *See* 43 P.S. § 333.109 (authorizing the department to promulgate regulations that "carry out the purposes of this act and to safeguard the minimum wage rates thereby established.").

Section 333.104 of the PMWA, entitled "Minimum wages," provides:

Except as may otherwise be provided under this act:

---

[11] Contrary to Amazon's assertion, *Stuber* does not stand for the proposition that our Court *must* construe the PMWA and the federal FLSA in a parallel fashion. *See Bayada*, 8 A.3d at 883 (rejecting argument that PMWA and federal FLSA must be read in *pari materia*). *Stuber* merely recognized that, where the statutory provisions of the enactments parallel each other, federal decisions construing the federal FLSA *may* be considered in interpreting the PMWA. As established herein, however, the PMWA does not contain the implicated federal PTPA provisions of the federal FLSA. To the extent that our *per curiam* affirmance of *Stuber* on the basis of the Commonwealth Court's opinion may be read as an endorsement of the principle that the PMWA and federal FLSA mirror each other in all respects and must always be interpreted similarly, we disavow such a reading.

(a) Every employer shall pay to each of his or her employes wages for *all hours worked* at a rate of not less than:

* * *

(8) Seven dollars fifteen cents ($7.15) an hour beginning July 1, 2007.

* * *

(c) Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: Provided, That students employed in seasonal occupations as defined and delimited by regulations promulgated by the secretary may, by such regulations, be excluded from the overtime provisions of this act: And provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek. An employer shall not be in violation of this subsection if the employer is entitled to utilize, and acts consistently with, section 7(j) of the Fair Labor Standards Act of 1938 (52 Stat. 1060, 29 U.S.C. § 207(j)) and regulations promulgated under that provision.

43 P.S. § 333.104 (emphasis added).

The PMWA does not define "hours worked"; however, consistent with its legislatively prescribed authority, the Pennsylvania Department of Labor and Industry promulgated Section 231.1 which, as set forth above, defines this term as follows:

> *Hours worked*--The term includes time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1; *see generally id.* § 231.1(a) ("Terms used in this chapter shall have the same meaning and be defined in the same manner as in the act.").[12] There is no suggestion that this regulation was not validly enacted by the Department of Labor and Industry in 1977, nor has the General Assembly sought to alter or supplant this definition in the intervening years. Accordingly, we regard it as reflective of our legislature's intent regarding the proper interpretation of the term "hours worked" under the PMWA, and we will interpret it in accordance with the remedial objectives of that legislation detailed above. *See Hospital Association of Pennsylvania v. MacLeod*, 410 A.2d 731, 734 n.10 (Pa. 1980) ("[A]dministrative interpretations, not disturbed by the Legislature, are appropriate guides to legislative intent.").

When "interpreting an administrative regulation, as in interpreting a statute, the plain language of the regulation is paramount." *Schappell v. Motorists Mutual Insurance Company*, 934 A.2d 1184, 1187 (Pa. 2007). Here, the plain language of Section 231.1 provides that "hours worked" includes four separate categories of an employee's time:

- "time during which an employee is required by the employer to be on the premises of the employer,"

- "[time during which an employee is required by the employer] to be on duty or to be at the prescribed work place,"

- "time spent in traveling as part of the duties of the employee during normal working hours,"

---

[12] We reject Amazon's argument that Section 331.104(c)'s requirement that the determination of hours in a "workweek" be used to calculate overtime pay is the dispositive consideration in this matter. As our Court has recognized, the computation of overtime pay for a "workweek" depends on a determination of the actual number of "hours worked" by an employee in that "workweek"; thus, ascertaining whether a particular employee activity constitutes "hours worked" is an indispensable part of that assessment. *See Chevalier*, 220 A.3d at 1058.

- "and time during which an employee is employed or permitted to work".

34 Pa. Code § 231.1. Thus, all time which an employee spends performing any one of these four types of activity constitutes hours worked for purposes of this regulation.

Applying this provision, and accepting the Sixth Circuit's finding of fact as true that Amazon "requires" employees to remain on their premises — the warehouse — until the security screenings are complete, all time spent by the employees waiting to undergo, and undergoing, the security screenings constitutes "hours worked" within the meaning of Section 231.1 and, thus, within the meaning of the PMWA.[13]

Given our conclusion in this regard, we need not determine whether Employees were "on duty" or "at their prescribed work place," or "employed or permitted to work," as those terms are used in Section 231.1.[14] However, we reject Amazon's broad contention that only time in which employees are required to be on their premises "working" – *i.e.*, engaged in duties or tasks directly related to the specific requirements of their job or occupation – can constitute "hours worked" for purposes of the PMWA. Section 231.1 establishes that this suggested interpretation is unfounded and unreasonably constrained, as this regulation specifically designates *all* "time during which an employee

---

[13] 34 Pa. Code § 231.1 enumerates only two specific employee activities that will be excluded from "hours worked": "time allowed for meals . . . unless the employee is required or permitted to work during that time", and "time spent on the premises of the employer for the convenience of the employee." Neither exception is applicable under the facts of this case because, as recognized by the parties, the time Employees spend undergoing the security screenings is not "time allowed for meals"; nor are these screenings done for the convenience of the Employees, as they are required by Amazon of all employees and performed at its exclusive direction.

[14] It is undisputed by the parties that the time Employees spent undergoing the security screenings did not constitute "time spent in traveling as part of the duties of the employee during normal working hours."

is required by the employer to be on the premises of the employer" as compensable hours worked, regardless of whether the employee is actually performing job-related duties while on the premises. *Id.* § 231.1. (Again, the Sixth Circuit determined that each of these Employees was required to remain on Amazon warehouse premises for the duration of time it took to complete these security screenings at the end of every shift they worked.) We therefore answer the first certified question in the affirmative.

### III. *De minimis* exception under the PMWA

### A. Arguments

We next address whether Pennsylvania recognizes a "*de minimis*" exception to claims under the PMWA. Employees argue that there is nothing in either the text or interpretative regulations of the PMWA which establishes a *de minimis* exception of the type articulated by the high Court in *Anderson*, an observation made by the dissent in *Caierelli. See Caierelli v. Sears Roebuck*, 46 A.3d 643, 648 (Pa. 2012) (McCaffery, J. dissenting). Further, Employees assert that the plain language of both the text of the PMWA and 32 Pa. Code § 231.1(a) requires payment for "all hours worked." Employees' Brief at 38. In Employees' view, this repudiates the suggestion that any portion of the time an employee works can be disregarded under the PMWA for purposes of establishing the employer's obligation to pay wages.

Additionally, Employees contend that, even if tools of statutory construction are utilized, they support the conclusion that a *de minimis* exception is not contemplated by either the PMWA or Section 231.1. Employees note that the *de minimis* exception has been in existence as an interpretative principle for the federal FLSA since the *Anderson* decision in 1946. Yet, Employees argue, neither the General Assembly nor the

Department of Labor and Industry have incorporated such an exception into the PMWA or Section 231.1, even though both were brought into existence long after *Anderson* was decided. Employees assert that our Court should not recognize such an exception in this case, given that it would contravene the overarching public policy of improving the wages of workers reflected in the PMWA.[15]

In response, Amazon argues that a *de minimis* exception should be applied to the PMWA, just as the United States Supreme Court crafted for the federal FLSA in *Anderson*. Amazon proffers that the high Court's rationale in that case should be adopted by our Court, as it recognizes that there are some periods of time an employee spends on the employer's premises that are too insubstantial to warrant compensation. Amazon notes our Court has applied this doctrine in other non-wage and hour cases, such as under the Fair Trade Act of 1935, *see* Amazon's Brief at 39 (citing *Bristol-Myers v. Lit Brothers*, 6 A.2d 843 (Pa. 1939)), and it observes that other states like Illinois and Washington have adopted such an exception under their own wage and hour laws, whereas only California has affirmatively rejected such a rule by statute. Amazon contends that rejecting the exception would contravene public policy by harming small

---

[15] *Amici* AFL-CIO and SEIU align with Employees' view that there is no *de minimis* exception in Pennsylvania law under the PMWA. *Amici* further reject Amazon's invitation to adopt any such exception, given that, from their perspective, such a rule would subvert the strong public policy of interpreting the PMWA in favor of increasing the wages of workers. Moreover, *amici* assert that adoption of such a rule is unwarranted, given that the loss of even a portion of earned wages sustained by workers, particularly those earning a low or minimum wage, is not trivial or trifling to them, given the aggregated value of even a few minutes a day of lost wages.

businesses who cannot bear the costs of a multiplicity of small wage and hour claims as readily as can a large corporation like itself.[16]

## B. Analysis

As indicated previously, *see supra* note 6, the *de minimis* exception articulated by the high Court in *Anderson* was one of its own judicial creation, and was crafted as part of its interpretation of the federal FLSA, which it read as excluding certain very insignificant intervals of an employee's time spent at the workplace from the calculation of his or her wages:

> We do not, of course, preclude the application of a *de minimis* rule where the minimum walking time [to the employee's workstation] is such as to be negligible. The workweek contemplated by [the FLSA] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

> \* \* \*

> The employees proved, in addition, that they pursued certain preliminary activities after arriving at their places of work, such as putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and

---

[16] In their joint *amicus* brief, the National Retail Federation and the Pennsylvania Retailers Association contend that failure to recognize such an exception would render a whole host of routine and mundane activities attendant to entering and leaving the workplace, like using a badge or keycard swipe system, compensable, even though most of these activities require only a split-second of an employees' time. This, they claim, would subject all employers to the prospect of class action lawsuits for all the aggregate time employees spend doing these activities, creating an overwhelming financial burden for employers.

sharpening tools. These activities are clearly work falling within the definition enunciated and applied in [*Tennessee Coal v. Muscoda*, 321 U.S. 590 (1944) and *Jewell Ridge* Coal *v. Local 6167, UMWA*, 325 U.S. 161 (1945)]. They involve exertion of a physical nature, controlled or required by the employer and pursued necessarily and primarily for the employer's benefit. They are performed solely on the employer's premises and are a necessary prerequisite to productive work. There is nothing in such activities that partakes only of the personal convenience or needs of the employees. Hence they constitute work that must be accorded appropriate compensation under the statute. . . . Here again, however, it is appropriate to apply a *de minimis* doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek.

*Anderson*, 328 U.S. at 692-93 (citations omitted).

Subsequently, however, the United States Department of Labor issued an interpretative regulation, 29 C.F.R. § 785.47, setting limits on an employer's use of the *de minimis* doctrine in determining the number of hours worked by an employee to determine the wages owed the employee under the federal FLSA. This was ostensibly to ensure that the rule not be used by an employer to deprive an employee of compensation for small intervals of time he or she was regularly required to work. This regulation provides:

In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimis*. (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) *This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities.* An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. *See Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to

> $1 of additional compensation a week is "not a trivial matter to a workingman," and was not *de minimis*; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C.A. 2, 1953), *cert. denied* 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins v. E. I. du Pont de Nemours & Co.,* 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not *de minimis*.

29 C.F.R. § 785.47 (emphasis added). Thus, this regulation seemingly reflects the view of the Department of Labor that, in order for a period of an employee's time to be considered *de minimis*, it must truly be a triflingly small interval of an uncertain and indefinite duration, such that it cannot, as a matter of administrative practicality, be precisely recorded by the employer for purposes of compensating the employee.

More recently, in *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), the high Court signaled its possible discomfort with the continuing application of the *de minimis* exception to cases brought under the federal FLSA, given the inherent tension between the objective of that statute to secure compensation for all hours an employee spends working for an employer, and the concept that any period of time which constitutes hours of work under the FLSA and its interpretive regulations can be disregarded as trifling.

In *Sandifer*, the high Court was asked to determine whether the time employees spend donning and doffing protective gear that their employer, a steel company, required them to wear while working within its steelmaking plant was compensable under the federal FLSA, given that Section 209(o) of that statute specifically excluded time spent changing clothes from its definition of "hours worked."[17] Although the high Court ruled

---

[17] This section of the federal FLSA provides:
> "Hours Worked.—In determining for the purposes of [the minimum-wage and maximum-hours sections] of this title the

that the majority of the activities the employees were seeking compensation for – such as putting on and taking off a flame-retardant jacket, a pair of pants, a hood, a hardhat, a snood,[18] wrist protectors, and work gloves – met the definition of changing clothes, the time spent putting on and taking off other protective gear such as heat resistant eyeglasses, earplugs and respirators did not fit neatly within the statutory definition of clothing. Significantly, the high Court rejected the interpretative approach of other federal courts which found that the time employees spent putting on and taking off those other items was non-compensable under the federal FLSA because it was *de minimis*:

> We doubt that the *de minimis* doctrine can properly be applied to the present case. To be sure, *Anderson* included "putting on aprons and overalls" and "removing shirts" as activities to which "it is appropriate to apply a *de minimis* doctrine." *Id.* at 692–693, 66 S.Ct. 1187. It said that, however, in the context of determining what preliminary activities had to be counted as part of the gross workweek under § 207(a) of the Fair Labor Standards Act. A *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles — the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs. Or to put it in the context of the present case, there is no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood. If the statute in question requires courts to select among trifles, *de minimis non curat lex* is not Latin for *close enough for government work*.

---

hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

29 U.S.C. § 203(o).

[18] A snood is a hairnet that protects an employee's hair from heat damage caused by the steelmaking process.

*Sandifer*, 571 U.S. at 234 (emphasis supplied and footnote omitted). The high Court also specifically noted the Labor Department's stricter application of the *de minimis* doctrine to the federal FLSA when it promulgated 29 C.F.R. § 785.47. Ultimately, however, the high Court found that, because the vast majority of the items the employees were putting on and taking off before and after their workday qualified as clothing, the time spent on these activities was excluded from the FLSA's definition of hours worked by Section 208(o).

Even so, *Sandifer* indicates that the high Court's view of the relevance of the *de minimis* doctrine in the interpretation of the federal FLSA going forward is no longer certain. This decision, coupled with the restrictive formulation of the doctrine adopted by the Labor Department, indicates, at the very least, that the precise contours of this rule remain in flux with respect to the FLSA, and, thus, it is not a clear principle which readily lends itself to interpretation of a unique statutory enactment such as the PMWA.

In that regard, and critically, in stark contrast to the United States Supreme Court, our Court has *never* utilized this doctrine to interpret any of the provisions of the PMWA, or its accompanying regulations developed by the Pennsylvania Department of Labor and Industry. While it is true that our Court has recognized the relevance of the ancient equitable maxim *de minimis non curat lex* in the interpretation of statutes under certain circumstances, *see Bristol-Myers v. Lit Brothers*, 6 A.2d 843, 848 (Pa. 1939) ("Where there are irregularities of very slight consequence, it does not intend that the infliction of penalties should be inflexibly severe. If the deviation were a mere trifle, which, if continued in practice, would weigh little or nothing on the public interest, it might properly be overlooked."), our Court will apply this doctrine only if it is consistent with the underlying legislative purpose of the statutory enactment in question. *See id.* (examining the legislative purpose of the "Fair Trade Act" of 1939 — to prevent a seller from drastically

cutting of the price established by the brand name of the producer or trademark holder of a product, which was legislatively determined to be detrimental to the public interest because it encouraged cutthroat competition which decreased the number of product suppliers and resulted in increased unemployment and scarcity of products — and determining that this purpose was not subverted by a dealer's issuance of trading stamps in small denominations, given that their value resulted in a miniscule discount on the prices of products being sold); *Bailey v. Zoning Board of Adjustment of the City of Philadelphia*, 810 A.2d 492 (Pa. 2002) (rejecting interpretation of zoning code that would have required City Council approval of every change to a master zoning plan, no matter how insignificant, as inconsistent with legislative intent in enacting the zoning code).

When the text of the PMWA is read consistent with its legislatively articulated purpose which we have discussed at length above – to maintain the economic well-being of our Commonwealth's workforce by ensuring that each and every Pennsylvania worker is paid for all time he or she is required to expend by an employer for its own purposes – we discern no intent on the part of the General Assembly to allow a *de minimis* exception to the PMWA's irreducible requirements. The PMWA plainly and unambiguously requires payment for "all hours worked," 43 P.S. § 333.104, signifying the legislature's intent that *any* portion of the hours worked by an employee does not constitute a mere trifle.[19] We, therefore, answer this question in the negative.

---

[19] Employees assert that the total amount of uncompensated time they spent undergoing mandatory screenings cannot be considered insignificant to individuals such as themselves who work for hourly wages. Employees' Reply Brief at 43. In support, they highlight the allegations set forth above, *see supra* note 5, showing that, by their expert's calculations: over a span of 507 days – August 21, 2011 to August 2, 2015 – Heimbach was required to spend an average of 8.02 minutes per day submitting to the screening process, which totaled 67.75 hours of uncompensated time; over a 114-day interval – November 14, 2010 to June 12, 2011 – Salasky spent an average of 4.38 minutes per day undergoing these screenings, resulting in her amassing 9.46 hours of uncompensated time; and the aggregate uncompensated time for the security screenings spent by all employees who were class members was calculated at 205,725 hours.

## IV. Conclusion

In sum, for all of the aforementioned reasons, we answer the two questions certified to us from the United States Court of Appeals for the Sixth Circuit by concluding that time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening constitutes "hours worked" under the PMWA, and there is no *de minimis* exception to the PMWA.

This matter is returned to the Court of Appeals for the Sixth Circuit.

Chief Justice Baer and Justices Donohue, Dougherty and Wecht join the opinion.

Justice Saylor files a dissenting opinion.

Justice Mundy files a dissenting opinion in which Justice Saylor joins.