(Slip Opinion)          OCTOBER TERM, 2013          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SANDIFER ET AL. *v.* UNITED STATES STEEL CORP.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 12–417.  Argued November 4, 2013—Decided January 27, 2014

Petitioner Sandifer and others filed a putative collective action under the Fair Labor Standards Act of 1938, seeking backpay for time spent donning and doffing pieces of protective gear that they assert respondent United States Steel Corporation requires workers to wear because of hazards at its steel plants.  U. S. Steel contends that this donning-and-doffing time, which would otherwise be compensable under the Act, is noncompensable under a provision of its collective-bargaining agreement with petitioners' union.  That provision's validity depends on 29 U. S. C. §203(*o*), which allows parties to collectively bargain over whether "time spent in changing clothes . . . at the beginning or end of each workday" must be compensated.  The District Court granted U. S. Steel summary judgment in pertinent part, holding that petitioners' donning and doffing constituted "changing clothes" under §203(*o*).  It also assumed that any time spent donning and doffing items that were not "clothes" was "*de minimis*" and hence noncompensable.  The Seventh Circuit affirmed.

*Held*: The time petitioners spend donning and doffing their protective gear is not compensable by operation of §203(*o*). Pp. 3–15.

  (a) This Court initially construed compensability under the Fair Labor Standards Act expansively.  See, *e.g.*, *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680.  The Act was amended in 1949, however, to provide that the compensability of time spent "changing clothes or washing at the beginning or end of each workday" is a subject appropriately committed to collective bargaining, §203(*o*).  Whether petitioners' donning and doffing qualifies as "changing clothes" depends on the meaning of that statutory phrase. Pp. 3–6.

  (b) The term "clothes," which is otherwise undefined, is "interpreted as taking [its] ordinary, contemporary, common meaning." *Perrin*

v. *United States*, 444 U. S. 37, 42. In dictionaries from the era of §203(*o*)'s enactment, "clothes" denotes items that are both designed and used to cover the body and are commonly regarded as articles of dress. Nothing in §203(*o*)'s text or context suggests anything other than this ordinary meaning. There is no basis for petitioners' proposition that the unmodified term "clothes" somehow omits protective clothing. Section 203(*o*)'s exception applies only when the changing of clothes is "an integral and indispensable part of the principal activities for which covered workmen are employed," *Steiner* v. *Mitchell*, 350 U. S. 247, 256, and thus otherwise compensable under the Act. See 29 U. S. C. §254(a). And protective gear is the *only* clothing that is integral and indispensable to the work of many occupations, such as butchers and longshoremen. Petitioners' position is also incompatible with the historical context of §203(*o*)'s passage, contradicting contemporaneous Labor Department regulations and dictum in *Steiner*, see 350 U. S., at 248, 254–255. The interpretation adopted here leaves room for distinguishing between clothes and wearable items that are not clothes, such as some equipment and devices. The view of respondent and its *amici* that "clothes" encompasses the entire outfit that one puts on to be ready for work is also devoid of any textual foundation. Pp. 6–10.

(c) While the normal meaning of "changing clothes" connotes substitution, "changing" also carried the meaning to "alter" at the time of §203(*o*)'s enactment. The broader statutory context makes plain that "time spent in changing clothes" includes time spent in altering dress. Whether one exchanges street clothes for work clothes or simply chooses to layer one over the other may be a matter of purely personal choice, and §203(*o*) should not be read to allow workers to opt into or out of its coverage at random or at will when another reading is textually permissible. Pp. 10–11.

(d) Applying these principles here, it is evident that the donning and doffing in this case qualifies as "changing clothes" under §203(*o*). Of the 12 items at issue, only 3—safety glasses, earplugs, and a respirator—do not fit within the elaborated interpretation of "clothes." Apparently concerned that federal judges would have to separate the minutes spent clothes-changing and washing from the minutes devoted to other activities during the relevant period, some Courts of Appeals have invoked the doctrine *de minimis non curat lex* (the law does not take account of trifles). But that doctrine does not fit comfortably within this statute, which is all about trifles. A more appropriate way to proceed is for courts to ask whether the period at issue can, *on the whole*, be fairly characterized as "time spent in changing clothes or washing." If an employee devotes the vast majority of that time to putting on and off equipment or other non-clothes items, the

Syllabus

entire period would not qualify as "time spent in changing clothes" under §203(*o*), even if some clothes items were also donned and doffed. But if the vast majority of the time is spent in donning and doffing "clothes" as defined here, the entire period qualifies, and the time spent putting on and off other items need not be subtracted. Here, the Seventh Circuit agreed with the District Court's conclusion that the time spent donning and doffing safety glasses and earplugs was minimal. And this Court is disinclined to disturb the District Court's additional factual finding, not addressed by the Seventh Circuit, that the respirators were donned and doffed as needed during the normal workday and thus fell beyond §203(*o*)'s scope. Pp. 12–15.

678 F. 3d 590, affirmed.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, ALITO, and KAGAN, JJ., joined, and in which SOTOMAYOR, J., joined except as to footnote 7.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–417

CLIFTON SANDIFER, ET AL., PETITIONERS *v.* UNITED STATES STEEL CORPORATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 27, 2014]

JUSTICE SCALIA delivered the opinion of the Court.*

The question before us is the meaning of the phrase "changing clothes" as it appears in the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended, 29 U. S. C. §201 *et seq.* (2006 ed. and Supp. V).

## I. Facts and Procedural History

Petitioner Clifton Sandifer, among others, filed suit under the Fair Labor Standards Act against respondent United States Steel Corporation in the District Court for the Northern District of Indiana. The plaintiffs in this putative collective action are a group of current or former employees of respondent's steelmaking facilities.[1]    As

---

*JUSTICE SOTOMAYOR joins this opinion except as to footnote 7.

[1] Petitioners filed this action under 29 U. S. C. §216(b), which establishes a cause of action that may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Pending resolution of the instant summary-judgment dispute, a Magistrate Judge set aside a motion to certify the suit as a collective action, see No. 2:07–CV–443 RM, 2009 WL 3430222, *1, n. 1 (ND Ind., Oct. 15, 2009), but petitioners assert that their ranks are about 800 strong.

relevant here, they seek backpay for time spent donning and doffing various pieces of protective gear. Petitioners assert that respondent requires workers to wear all of the items because of hazards regularly encountered in steel plants.

Petitioners point specifically to 12 of what they state are the most common kinds of required protective gear: a flame-retardant jacket, pair of pants, and hood; a hardhat; a "snood"; "wristlets"; work gloves; leggings; "metatarsal" boots; safety glasses; earplugs; and a respirator.[2] At bottom, petitioners want to be paid for the time they have spent putting on and taking off those objects. In the aggregate, the amount of time—and thus money—involved is likely to be quite large. Because this donning-and-doffing time would otherwise be compensable under the Act, U. S. Steel's contention of noncompensability stands or falls upon the validity of a provision of its collective-bargaining agreement with petitioners' union, which says that this time is noncompensable.[3] The validity of that provision depends, in turn, upon the applicability of 29 U. S. C. §203(*o*) to the time at issue. That subsection allows parties to decide, as part of a collective-bargaining agreement, that "time spent in changing clothes . . . at the beginning or end of each workday" is noncompensable.

The District Court granted summary judgment in pertinent part to U. S. Steel, holding that donning and doffing

_____

[2] The opinions below include descriptions of some of the items. See 678 F. 3d 590, 592 (CA7 2012); 2009 WL 3430222, *2, *6. And the opinion of the Court of Appeals provides a photograph of a male model wearing the jacket, pants, hardhat, snood, gloves, boots, and glasses. 678 F. 3d, at 593.

[3] The District Court concluded that the collective-bargaining agreement provided that the activities at issue here were noncompensable, 2009 WL 3430222, *10, and the Seventh Circuit upheld that conclusion, 678 F. 3d, at 595. That issue was not among the questions on which we granted certiorari, and we take the import of the collective-bargaining agreement to be a given.

the protective gear constituted "changing clothes" within the meaning of §203(*o*). No. 2:07–CV–443 RM, 2009 WL 3430222, \*4–\*10 (ND Ind., Oct. 15, 2009). The District Court further assumed that even if certain items—the hardhat, glasses, and earplugs—were not "clothes," the time spent donning and doffing them was "*de minimis*" and hence noncompensable. *Id.,* at \*6. The Court of Appeals for the Seventh Circuit upheld those conclusions. 678 F. 3d 590, 593–595 (2012).[4]

We granted certiorari, 568 U. S. \_\_\_ (2013), and now affirm.

## II. Legal Background

The Fair Labor Standards Act, enacted in 1938, governs minimum wages and maximum hours for non-exempt "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U. S. C. §206(a) (minimum wages); §207(a) (maximum hours); see §213 (exemptions). The Act provides that "employee" generally means "any individual employed by an employer," §203(e)(1), and, in turn, provides that to "employ" is "to suffer or permit to work," §203(g).

The Act did not, however, define the key terms "work" and "workweek"—an omission that soon let loose a landslide of litigation. See *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 25–26 (2005). This Court gave those terms a broad reading, culminating in its holding in *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680 (1946), that "the statutory

---

[4] Petitioners also sought, *inter alia*, backpay for time spent traveling between the locker rooms where they don and doff at least some of the protective gear and their workstations. The District Court denied that portion of respondent's motion for summary judgment, 2009 WL 3430222, \*11, and the Seventh Circuit reversed, 678 F. 3d, at 595–598. That issue is not before this Court, so we express no opinion on it.

workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Id.*, at 690–691. That period, *Anderson* explained, encompassed time spent "pursu[ing] certain preliminary activities after arriving . . . , such as putting on aprons and overalls [and] removing shirts." *Id.*, at 692–693. "These activities," the Court declared, "are clearly work" under the Act. *Id.*, at 693.

Organized labor seized on the Court's expansive construction of compensability by filing what became known as "portal" actions (a reference to the "portals" or entrances to mines, at which workers put on their gear). "PORTAL PAY SUITS EXCEED A BILLION," announced a newspaper headline in late 1946. N. Y. Times, Dec. 29, 1946, p. 1. Stating that the Fair Labor Standards Act had been "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees," Congress responded by passing the Portal-to-Portal Act of 1947, 61 Stat. 84, as amended, 29 U. S. C. §251 *et seq.* (2006 ed. and Supp. V). §251(a).

The Portal-to-Portal Act limited the scope of employers' liability in various ways. As relevant here, it excluded from mandatorily compensable time

> "activities which are preliminary to or postliminary to [the] principal activity or activities [that an employee is employed to perform], which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 61 Stat. 87, 29 U. S. C. §254(a)(2).

The Department of Labor promulgated a regulation explaining that the Portal-to-Portal Act did not alter what is known as the "continuous workday rule," under which compensable time comprises "the period between the

commencement and completion on the same workday of an employee's principal activity or activities . . . [,] whether or not the employee engages in work throughout all of that period." 12 Fed. Reg. 7658 (1947); 29 CFR §790.6(b) (2013). Of particular importance to this case, a Labor Department interpretive bulletin also specified that whereas "changing clothes" and "washing up or showering" "would be considered 'preliminary' or 'postliminary' activities" when "performed outside the workday and . . . under the conditions normally present," those same activities "may in certain situations be so directly related to the specific work the employee is employed to perform that [they] would be regarded as an integral part of the employee's 'principal activity.'" 12 Fed. Reg. 7659, and n. 49; 29 CFR §790.7, and n. 49.

In 1949, Congress amended the Fair Labor Standards Act to address the conduct discussed in that interpretive bulletin—changing clothes and washing—by adding the provision presently at issue:

> "Hours Worked.—In determining for the purposes of [the minimum-wage and maximum-hours sections] of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 63 Stat. 911, 29 U. S. C. §203(*o*).

Simply put, the statute provides that the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining.

In *Steiner* v. *Mitchell*, 350 U. S. 247 (1956), the Court echoed the Labor Department's 1947 regulations by holding that "changing clothes and showering" can, under

some circumstances, be considered "an integral and indispensable part of the principal activities for which covered workmen are employed," reasoning that §203(*o*) "clear[ly] impli[ed]" as much. *Id.*, at 254–256. And in *IBP*, we applied *Steiner* to treat as compensable the donning and doffing of protective gear somewhat similar to that at issue here, 546 U. S., at 30. We said that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" under §254(a), *id.*, at 37.

As relevant to the question before us, U. S. Steel does not dispute the Seventh Circuit's conclusion that "[h]ad the clothes-changing time in this case not been rendered noncompensable pursuant to [§]203(*o*), it would have been a principal activity." 678 F. 3d, at 596. Petitioners, however, quarrel with the premise, arguing that the donning and doffing of protective gear does not qualify as "changing clothes."

### III. Analysis
### A. "Clothes"

We begin by examining the meaning of the word "clothes."[5] It is a "fundamental canon of statutory construction" that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States*, 444 U. S. 37, 42 (1979).

Dictionaries from the era of §203(*o*)'s enactment indicate that "clothes" denotes *items that are both designed and used to cover the body and are commonly regarded as articles of dress.* See Webster's New International Dictionary of the English Language 507 (2d ed. 1950) (Webster's Second) (defining "clothes" as "[c]overing for the

———————

[5] Although the Labor Department has construed §203(*o*) on a number of occasions, the Government has expressly declined to ask us to defer to those interpretations, which have vacillated considerably over the years.

*human body; dress; vestments; vesture*"); see also, *e.g.*, 2 Oxford English Dictionary 524 (1933) (defining "clothes" as "[c]overing for the person; wearing apparel; dress, raiment, vesture"). That is what we hold to be the meaning of the word as used in §203(*o*). Although a statute may make "a departure from the natural and popular acceptation of language," *Greenleaf* v. *Goodrich*, 101 U. S. 278, 284–285 (1880) (citing *Maillard* v. *Lawrence*, 16 How. 251 (1854)), nothing in the text or context of §203(*o*) suggests anything other than the ordinary meaning of "clothes."

Petitioners argue that the word "clothes" is too indeterminate to be ascribed any general meaning but that, whatever it *includes*, it necessarily *excludes* items designed and used to protect against workplace hazards. That position creates a distinction between "protection," on the one hand, and "decency or comfort," on the other—a distinction that petitioners appear to have derived from Webster's Second, which elaborates that "clothes" is "a general term for whatever covering is worn, or is made to be worn, *for decency or comfort*." Webster's Second 507 (emphasis added). But that definition does not exclude, either explicitly or implicitly, items with a protective function, since "protection" and "comfort" are not incompatible, and are often synonymous. A parasol protects against the sun, enhancing the comfort of the bearer—just as work gloves protect against scrapes and cuts, enhancing the comfort of the wearer. Petitioners further assert that protective items of apparel are referred to as "clothing" rather than "clothes." They point out that, when introduced by the adjective "protective," the noun "clothing" is used more commonly than "clothes." That is true enough, but it seems to us explained by euphonic preference rather than difference in meaning. We see no basis for the proposition that the unmodified term "clothes" somehow omits protective clothing.

Petitioners' proffered distinction, moreover, runs the risk of reducing §203(*o*) to near nothingness. The statutory compensation requirement to which §203(*o*) provides an exception embraces the changing of clothes only when that conduct constitutes "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner*, 350 U. S., at 256. But protective gear is the *only* clothing that is integral and indispensable to the work of factory workers, butchers, longshoremen, and a host of other occupations. Petitioners' definition of "clothes" would largely limit the application of §203(*o*) to what might be called workers' costumes, worn by such employees as waiters, doormen, and train conductors. Petitioners insist that their definition excludes only items with some specific *work-hazard-related* protective function, but that limitation essentially abandons the assertion that clothes are for decency or comfort, leaving no basis whatever for the distinction.

Petitioners' position is also incompatible with the historical context surrounding §203(*o*)'s passage, since it flatly contradicts an illustration provided by the Labor Department's 1947 regulations to show how "changing clothes" could be intimately related to a principal activity. See 29 CFR §790.7, and n. 49. Those regulations cited the situation in which "an employee in a chemical plant . . . cannot perform his [job] without putting on certain clothes" and specified that "[s]uch a situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." 12 Fed. Reg. 7660, and n. 65; 29 CFR §790.8(c), and n. 65. And petitioners' position contradicts this Court's only prior opinion purporting to interpret §203(*o*). *Steiner*, announced less than a decade after the statute's passage, suggested in dictum that, were there a pertinent provision of a collective-bargaining agreement, §203(*o*) would have applied to the facts of that case—where work-

ers "ma[d]e extensive use of dangerously caustic and toxic materials, and [we]re compelled by circumstances, including vital considerations of health and hygiene, to change clothes" on the job site. 350 U. S., at 248, 254–255.

Petitioners contend that any attempt at a general definition of "clothes" will cast a net so vast as to capture all manner of marginal things—from bandoliers to barrettes to bandages. Yet even acknowledging that it may be impossible to eliminate all vagueness when interpreting a word as wide-ranging as "clothes," petitioners' fanciful hypotheticals give us little pause. The statutory context makes clear that the "clothes" referred to are items that are integral to job performance; the donning and doffing of other items would create no claim to compensation under the Act, and hence no need for the §203(*o*) exception. Moreover, even with respect to items that can be regarded as integral to job performance, our definition does not embrace the view, adopted by some Courts of Appeals, that "clothes" means essentially anything worn on the body—including accessories, tools, and so forth. See, *e.g.*, *Salazar* v. *Butterball, LLC*, 644 F. 3d 1130, 1139–1140 (CA10 2011) ("clothes" are "items or garments worn by a person" and include "knife holders"). The construction we adopt today is considerably more contained. Many accessories—necklaces and knapsacks, for instance—are not "both designed and used to cover the body." Nor are tools "commonly regarded as articles of dress." Our definition leaves room for distinguishing between clothes and wearable items that are not clothes, such as some equipment and devices.[6]

Respondent and its *amici*, by contrast, give the term in

––––––––––

[6] Petitioners and their *amici* insist that equipment can never be clothes. While we do not believe that every wearable piece of equipment qualifies—for example, a wristwatch—our construction of "clothes" does not exclude all objects that could conceivably be characterized as equipment.

question a capacious construction, effectively echoing the Courts of Appeals mentioned above. On this view, "clothes" encompasses the entire outfit that one puts on to be ready for work. That interpretation is, to be sure, more readily administrable, but it is even more devoid of a textual foundation than petitioners' offering. Congress could have declared bargainable under §203(*o*) "time spent in changing *outfits*," or "time spent in putting on and off *all the items needed for work*." For better or worse, it used the narrower word "clothes." "The role of this Court is to apply the statute as it is written—even if we think some other approach might accord with good policy." *Burrage* v. *United States*, *ante* at 14 (internal quotation marks and brackets omitted).

## B. "Changing"

Having settled upon the meaning of "clothes," we must now consider the meaning of "changing." Petitioners assert that when used with certain objects—such as "tire," "diaper," or, indeed, "clothes"—the term "changing" connotes substitution. That is undoubtedly true. See Webster's Second 448 (defining "change" as "to make substitution of, for, or among, often among things of the same kind . . . ; as, to *change* one's clothes"). One would not normally say he has changed clothes when he puts on an overcoat. Petitioners conclude from this that items of protective gear that are put on *over* the employee's street clothes are not covered by §203(*o*).

We disagree. Although it is true that the normal meaning of "changing clothes" connotes substitution, the phrase is certainly able to have a different import. The term "changing" carried two common meanings at the time of §203(*o*)'s enactment: to "substitute" and to "alter." See, *e.g.,* 2 Oxford English Dictionary 268 (defining "change," among other verb forms, as "to substitute another (or others) for, replace by another (or others)" and "[t]o make

(a thing) other than it was; to render different, alter, modify, transmute"). We think that despite the usual meaning of "changing clothes," the broader statutory context makes it plain that "time spent in changing clothes" includes time spent in altering dress.

The object of §203(*o*) is to permit collective bargaining over the compensability of clothes-changing time and to promote the predictability achieved through mutually beneficial negotiation. There can be little predictability, and hence little meaningful negotiation, if "changing" means only "substituting." Whether one actually exchanges street clothes for work clothes or simply layers garments atop one another after arriving on the job site is often a matter of purely personal choice. That choice may be influenced by such happenstances and vagaries as what month it is, what styles are in vogue, what time the employee wakes up, what mode of transportation he uses, and so on. As the Fourth Circuit has put it, if the statute imposed a substitution requirement "compensation for putting on a company-issued shirt might turn on something as trivial as whether the employee did or did not take off the t-shirt he wore into work that day." *Sepulveda* v. *Allen Family Foods, Inc.*, 591 F. 3d 209, 216 (2009). Where another reading is textually permissible, §203(*o*) should not be read to allow workers to opt into or out of its coverage at random or at will.[7]

------------

[7] This Court has stated that "exemptions" in the Fair Labor Standards Act "are to be narrowly construed against the employers seeking to assert them." *Arnold* v. *Ben Kanowsky, Inc.*, 361 U. S. 388, 392 (1960). We need not disapprove that statement to resolve the present case. The exemptions from the Act generally reside in §213, which is entitled "Exemptions" and classifies certain kinds of workers as uncovered by various provisions. Thus, in *Christopher* v. *SmithKline Beecham Corp.*, 567 U. S. \_\_\_, \_\_\_–\_\_\_, n. 21 (2012) (slip op., at 19–20, n. 21), we declared the narrow-construction principle inapplicable to a provision appearing in §203, entitled "Definitions."

### C. Application

Applying the foregoing principles to the facts of this case, we hold that petitioners' donning and doffing of the protective gear at issue qualifies as "changing clothes" within the meaning of §203(*o*).

Petitioners have pointed to 12 particular items: a flame-retardant jacket, pair of pants, and hood; a hardhat; a snood; wristlets; work gloves; leggings; metatarsal boots; safety glasses; earplugs; and a respirator. The first nine clearly fit within the interpretation of "clothes" elaborated above: they are both designed and used to cover the body and are commonly regarded as articles of dress. That proposition is obvious with respect to the jacket, pants, hood, and gloves. The hardhat is simply a type of hat. The snood is basically a hood that also covers the neck and upper shoulder area; on the ski slopes, one might call it a "balaclava." The wristlets are essentially detached shirt-sleeves. The leggings look much like traditional legwarm-ers, but with straps. And the metatarsal boots—more commonly known as "steel-toed" boots—are just a special kind of shoe.

The remaining three items, by contrast, do not satisfy our standard. Whereas glasses and earplugs may have a covering function, we do not believe that they are commonly regarded as articles of dress. And a respirator obviously falls short on both grounds. The question is whether the time devoted to the putting on and off of these items must be deducted from the noncompensable time. If so, federal judges must be assigned the task of separating the minutes spent clothes-changing and washing from the minutes devoted to other activities during the period in question.

Some Courts of Appeals, including the Court of Appeals in this case, have sought to avoid, or at least mitigate, this difficulty by invoking the doctrine *de minimis non curat lex* (the law does not take account of trifles). This, they

hold, enables them to declare noncompensable a few minutes actually spent on something other than clothes-changing—to wit, donning and doffing non-clothes items.

Although the roots of the *de minimis* doctrine stretch to ancient soil, its application in the present context began with *Anderson*. There, the Court declared that because "[s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act," such "trifles" as "a few seconds or minutes of work beyond the scheduled working hours" may be "disregarded." 328 U. S., at 692. "We [thus] do not . . . preclude the application of a *de minimis* rule." *Ibid.*

We doubt that the *de minimis* doctrine can properly be applied to the present case. To be sure, *Anderson* included "putting on aprons and overalls" and "removing shirts" as activities to which "it is appropriate to apply a *de minimis* doctrine." *Id.*, at 692–693. It said that, however, in the context of determining what preliminary activities had to be counted as part of the gross workweek under §207(a) of the Fair Labor Standards Act.[8] A *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs. Or to put it in the context of the present case, there is no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood. If the statute in question requires courts to

---

[8]We note, moreover, that even in that context, the current regulations of the Labor Department apply a stricter *de minimis* standard than *Anderson* expressed. They specify that "[a]n employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." 29 CFR §785.47.

select among trifles, *de minimis non curat lex* is not Latin for *close enough for government work.*

That said, we nonetheless agree with the basic perception of the Courts of Appeals that it is most unlikely Congress meant §203(*o*) to convert federal judges into time-study professionals. That is especially so since the consequence of dispensing with the intricate exercise of separating the minutes spent clothes-changing and washing from the minutes devoted to other activities is not to prevent compensation for the uncovered segments, but merely to leave the issue of compensation to the process of collective bargaining. We think it is possible to give the text of §203(*o*) a meaning that avoids such relatively inconsequential judicial involvement in "a morass of difficult, fact-specific determinations," *Sepulveda*, 591 F. 3d, at 218.

The forerunner of §203(*o*)—the Portal-to-Portal Act provision whose interpretation by the Labor Department prompted its enactment—focused narrowly on the activities involved: "activities which are preliminary to or postliminary to [the employee's] principal activity or activities." §254(a)(2). Section 203(*o*), by contrast, is addressed not to certain "activities," but to "time spent" on certain activities, viz., "changing clothes or washing." Just as one can speak of "spending the day skiing" even when less-than-negligible portions of the day are spent having lunch or drinking hot toddies, so also one can speak of "time spent changing clothes and washing" when the vast preponderance of the period in question is devoted to those activities. To be sure, such an imprecise and colloquial usage will not ordinarily be attributed to a statutory text, but for the reasons we have discussed we think that appropriate here. The question for courts is whether the period at issue can, *on the whole*, be fairly characterized as "time spent in changing clothes or washing." If an employee devotes the vast majority of the time in question to putting on and off equipment or other non-clothes items

(perhaps a diver's suit and tank) the entire period would not qualify as "time spent in changing clothes" under §203(*o*), even if some clothes items were donned and doffed as well. But if the vast majority of the time is spent in donning and doffing "clothes" as we have defined that term, the entire period qualifies, and the time spent putting on and off other items need not be subtracted.

In the present case, the District Court stated that "the time expended by each employee donning and doffing" safety glasses and earplugs "is minimal," 2009 WL 3430222, \*6, a conclusion with which the Seventh Circuit agreed, 678 F. 3d, at 593. As for respirators, the District Court stated that they "are kept and put on as needed at job locations," 2009 WL 3430222, \*2, which would render the time spent donning and doffing them part of an employee's normal workday and thus beyond the scope of §203(*o*). The Seventh Circuit did not address respirators at all, and we are not inclined to disturb the District Court's factual conclusion.

\*    \*    \*

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*