**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12984

————————————————

NYESHA SWOPE,
ANDREA TURNER,
ANGELA BLAKE,
CLARA BUTLER,
MELANIE HOUGH, et al.,

*Plaintiffs-Appellants-Cross Appellees,*

*versus*

EPISCOPAL FOUNDATION OF JEFFERSON COUNTY,
    d.b.a. St. Martin's in the Pines,

*Defendant-Appellee-Cross Appellant.*

————————————————

Appeals from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01392-AMM

————————————————

Before BRANCH, LUCK, Circuit Judges, and MORENO,* District Judge.

MORENO, District Judge:

This appeal concerns the calculation of overtime pay and the denial of protected leave during the Covid-19 pandemic at a retirement and assisted living facility. Plaintiffs brought collective and individual claims under the Fair Labor Standards Act and the Family and Medical Leave Act. Following cross-motions for summary judgment, the district court granted each motion in part. After careful review and with the benefit of oral argument, we find no reversible error and affirm the district court's ruling.

## I.    BACKGROUND

### A.    Factual Background

St. Martin's in the Pines ("St. Martin's") is a retirement and assisted living facility. During the height of the Covid-19 pandemic, Nyesha Swope worked at the facility as a Certified Nursing Assistant.

#### 1.    Payment Practices at St. Martin's

During this time, St. Martin's established a Covid-19 ward to isolate residents who tested positive and instituted a series of financial incentives to encourage employees to take shifts, including

---

* The Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

shifts in the Covid-19 ward. Four incentives are relevant for purposes of this appeal.

First, St. Martin's paid Registered Nurses, Licensed Practical Nurses, and Certified Nursing Assistants an extra $3 an hour and caregivers an extra $2 an hour for work performed during the pandemic. We refer to this bonus as "add-on pay." Second, employees working in the Covid-19 ward earned an additional $2 per hour. We refer to this bonus as "hazard pay." Third, St. Martin's paid a $100 bonus to care staff that picked up and fully completed an unscheduled eight-hour or twelve-hour shift on the weekends. We refer to this bonus as the "weekend bonus." Finally, St. Martin's paid employees two one-time bonuses in July and December of 2020. These "retention bonuses," as we will refer to them, were "paid to reward employees who stayed through the pandemic, but it was not announced to employees in advance that they would receive [the bonuses] if they remained employed or met any type of goal or objective."

In addition to these financial incentives, the long-standing pay policies at St. Martin's provide that non-exempt employees are paid overtime compensation at "[o]ne-and-one-half times the regular rate of pay for actual hours worked in excess of 40 hours in a one-week period." It was further standard practice to require Certified Nursing Assistants like Swope to clock out for a meal break at each shift.

2.        Swope's Employment at St. Martin's

St. Martin's hired Swope on a full-time basis in May 2020. In July 2021, Swope's mother had a kidney transplant. The following month, Swope submitted a letter to St. Martin's to "put[] in [her] two weeks' notice," thanked St. Martin's "for the opportunity to work" for the company, and gave "notice" that she would be going on "PRN" status.

"PRN" stands for "per requested need," meaning that such employees work on an as-needed basis. Full-time employees could apply, with advance notice, to transfer to this as-needed status. St. Martin's would then review the request and make a decision based on availability of such positions, the applicant's performance in their current department, and the applicant's attendance record.

At a meeting with Swope to discuss her letter, St. Martin's informed Swope that it would treat Swope's two weeks' notice as a resignation and denied her request to transfer to as-needed status. Swope then explained to St. Martin's that she was requesting to change her status because she needed to care for her sick mother. Thereafter, St. Martin's Corporate Compliance Officer told Swope that St. Martin's would have offered her FMLA leave if not for her resignation.

3.        Swope's Lawsuit

She subsequently filed this lawsuit, asserting claims under the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA").

Under the FLSA, Swope brought a collective action against St. Martin's on behalf of herself and similarly situated employees, alleging that the facility failed to pay all overtime compensation owed. Specifically, she claimed that St. Martin's calculated overtime rates without including hazard pay and certain bonuses in employees' regular rate of pay. Because the overtime calculations multiplied the employees' regular base rate, she argued that St. Martin's failure to include hazard pay and other hourly bonuses in the regular rate resulted in an underpayment. She also alleged that although she was required to clock out for meal breaks, she frequently continued working during those unpaid breaks without compensation.

Under the FMLA, Swope alleged that St. Martin's interfered with her attempt to take protected leave and retaliated against her by terminating her employment when she sought to exercise her FMLA rights.

The district court struck the original complaint as an impermissible shotgun pleading and ordered Swope to replead in compliance with Federal Rules of Civil Procedure 8(a)(2) and 10(b), as well as the Eleventh Circuit's pleading standards.

In her amended complaint, Swope again asserted FLSA claims on behalf of herself and other similarly situated employees, seeking unpaid overtime compensation and liquidated damages. She also maintained an individual claim for retaliatory termination under the FMLA. Before any collective action was certified, Andrea

Turner, another St. Martin's employee, filed a written consent to opt-in to the proposed class, thereby making her a party plaintiff.

          4.      St. Martin's Recalculation of Employees' Overtime Compensation

Upon the initiation of the lawsuit, St. Martin's sought professional guidance from an accounting firm to determine whether its method of calculating Covid-19-related compensation was accurate.

A certified public accountant at the firm attested that St. Martin's payroll indicated that the facility paid overtime compensation for all hours worked in excess of forty in a workweek. However, the payroll system failed to incorporate the Covid-19 hazard pay, the add-on pay, the weekend bonus, and the retention bonuses into the employees' "regular rate" when calculating overtime. The accounting firm calculated the additional overtime compensation owed based on the Covid-19 premiums paid to each affected employee. The retention bonuses were excluded from that calculation because St. Martin's classified them as discretionary. The accounting review concluded that twelve current and former employees, including Swope, were owed additional overtime wages.

Accordingly, on September 2, 2022, St. Martin's sent the following letter to its employees:

Dear Employee:

     We recently learned that your pay was calculated incorrectly sometime during the years 2020

and/or 2021. Specifically, we discovered that our pay-roll system failed to include certain incentives and premium pay related to Covid-19 in your overtime rate. As a result, you were paid less overtime wages than what was owed.

We apologize for this error. To comply with our legal obligations and to account for any accrued interest, we are paying you double the amount that you were underpaid during this timeframe, less applicable withholdings. You will receive either one or two checks for the amount owed. The first check is a pay-roll check for the amount of overtime wages owed, less applicable withholdings. The second check is for the additional payment to cover any interest owed. The second check is not issued as a payroll check which means St. Martin's will not withhold any pay-roll taxes from that amount.

Again, we apologize for this oversight. If you have any questions, please feel free to contact [St. Martin's].

Counsel for St. Martin's sent a letter to Swope's counsel on September 12, 2022 enclosing two checks, $1,124.30 payable to Swope and $1,249.65 payable to Turner. The letter stated that these amounts reflected the full recovery each would be entitled to if they succeeded on all claims asserted in the amended complaint. It also included a spreadsheet detailing the calculations used to reach

those figures and requested that Swope's counsel provide an accounting of the costs and reasonable attorney's fees so that St. Martin's could issue payment for those amounts.

St. Martin's also issued checks to other current and former employees. Among the plaintiffs here, nine employees deposited the checks that St. Martin's issued. One employee, Kanesha McDole, never received a check. Swope and Turner did not cash their checks.

### B.    Procedural Background

Swope moved to conditionally certify two FLSA collective actions—one based on the Covid-19 overtime payment claim and another based on the automatic lunch break deduction claim. St. Martin's opposed conditional certification and moved for partial summary judgment as to Swope's FLSA claim, arguing that the claims were moot because Swope and Turner had been paid all amounts owed. The district court denied St. Martin's motion for summary judgment. It found that Swope and Turner had a live case or controversy because they had not deposited their checks. Further, the court held that additional discovery was necessary to confirm the amounts owed to putative class members. The court granted Swope's motion for conditional certification as to the Covid-19 overtime payment class, but denied certification of the automatic lunch break deduction class because no such claim was pled in the amended complaint.

When addressing the scope of notice to potential class members, St. Martin's asked the court to limit the class to employees

who (1) received hazard pay for working in a Covid-19 ward, (2) worked more than forty hours in the relevant week, and (3) had not already been fully compensated by the September 2022 payments. Swope and Turner sought a broader definition that would include employees who received other incentive payments. The district court largely adopted St. Martin's proposed definition and authorized notice consistent with that ruling.

After notice issued, eleven former employees filed consents to join the FLSA collective. One opt-in plaintiff was later dismissed for her failure to participate in discovery, leaving ten opt-in plaintiffs.

Swope, Turner, and McDole—the only plaintiffs who did not cash their checks—moved for partial summary judgment on their FLSA claims. Although they challenged St. Martin's decision not to include the two retention bonuses in the overtime calculation, they nevertheless requested entry of judgment in the amounts St. Martin's conceded were owed, plus liquidated damages and attorney's fees.

St. Martin's moved to dismiss the opt-in plaintiffs and to decertify the collective action. It also sought summary judgment on all claims. St. Martin's argued that the FLSA claims were moot and *de minimis*. As to Swope's individual FMLA claims, it contended that she had not properly requested leave.

The district court denied St. Martin's motion to dismiss the opt-in plaintiffs and directed that they be added as named plaintiffs. It granted St. Martin's motion to decertify the collective action and

granted summary judgment as to the opt-in plaintiffs' FLSA claims, except as to McDole. The court further granted St. Martin's motion for summary judgment as to Swope's FMLA claims. Finally, it granted summary judgment in favor of Swope, Turner, and McDole's FLSA hazard pay claim because it was undisputed that St. Martin's excluded the hazard pay in the overtime pay calculation. The court awarded judgment for the amount St. Martin's agreed it owed in September 2022 and ordered the facility to re-issue the checks. The Plaintiffs filed a notice of appeal and St. Martin's filed its notice of cross-appeal.

## II.    JURISDICTION[1]

We cannot address the merits of this appeal without first determining that we have jurisdiction to do so. *See Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues.").

"The primary limitation on [a litigant's] appellate standing is the adverseness requirement which is one of the rules of standing peculiar to the appellate setting. Only a litigant 'who is aggrieved by the judgment or order may appeal.'" *Knight v. Alabama*, 14 F.3d 1534, 1556 (11th Cir. 1994) (quoting *Dairyland Ins. Co. v. Makover*,

---

[1] After the parties submitted their notices of appeal and cross-appeal, we ordered supplemental briefing on the issue of whether Turner and McDole had appellate standing. After briefing, we carried the jurisdictional question with the case. No party contested Swope's appellate standing, so we now answer the jurisdictional question as to Turner and McDole.

654 F.2d 1120, 1123 (5th Cir. 1981)). St. Martin's submits that this Court lacks jurisdiction to hear this appeal because the district court granted Turner and McDole's motion for partial summary judgment and therefore, the adverseness requirement is not met.

While Swope, Turner, and McDole moved for partial summary judgment as to the amount St. Martin's agreed it owed, they continued to dispute whether that amount was the full amount to which they were entitled. Swope, Turner, and McDole asked the district court to order the inclusion of the two one-time bonuses paid to employees in the calculation of the rate of pay. The district court determined that the bonuses were not properly pled in the complaint. It further held that the bonuses were discretionary, and thus not part of the overtime calculation based on regular pay.

Turner and McDole are not adverse to the portion of the order granting them partial summary judgment. They are, however, adverse to the court's determination that the checks issued to employees were for the proper amount. Accordingly, we have jurisdiction to hear Turner and McDole's appeal. *See Forney v. Apfel*, 524 U.S. 266, 271 (1998) ("[A] party is 'aggrieved' and ordinarily can appeal a decision 'granting in part and denying in part the remedy requested.'") (quoting *United States v. Jose*, 519 U.S. 54, 56 (1996)).

## III.    STANDARD OF REVIEW

"We review de novo the resolution of cross-motions for summary judgment." *Ramji v. Hospital Housekeeping Syst.*, 992 F.3d 1233, 1241 (11th Cir. 2021) (citation omitted). The Court applies "the same legal standards that bind the district court, so we assess

the evidence and all reasonable inferences we can draw from it in the light most favorable to the non-moving party." *Id.* We "may not weigh conflicting evidence or make credibility determinations of [our] own. If the record presents disputed issues of fact, [we] may not decide them; rather, [we] must deny the motion and [the case must] proceed to trial." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citation omitted).

## IV.    DISCUSSION

Four issues are before us. First, whether the district court erred in granting partial summary judgment to Swope, Turner, and McDole on their FLSA overtime claims based on the previously issued checks. Second, whether the court erred in granting summary judgment to St. Martin's on the remaining FLSA claims based on its conclusion that the two retention bonuses were properly excluded from the overtime calculation. Third, whether the court erred in granting summary judgment to St. Martin's on Plaintiffs' FLSA claim for unpaid work during lunch breaks. Finally, whether the district court properly granted summary judgment to St. Martin's on Swope's FMLA interference and retaliation claims. We address each issue in turn.

### A.    The District Court Properly Granted Partial Summary Judgment in Favor of Swope, Turner, and McDole on their FLSA Overtime-Pay Claims

St. Martin's argues that the district court erred in granting summary judgment in favor of Swope, Turner, and McDole on

their overtime-pay claim because their claim was moot and their recovery was *de minimis*. Because we find that a live case or controversy exists, and because the *de minimis* doctrine cannot properly be applied to the facts of this case under the FLSA, we affirm the district court's summary judgment ruling in favor of Swope, Turner, and McDole.

### 1.    Swope's, Turner's, and McDole's Claims Were Not Moot

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. Const., art. III, § 2). The Supreme Court has "interpreted this requirement to demand that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.* (quoting *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (alteration in *Campbell-Ewald*)). A case is moot and must be dismissed "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit.'" *Id.* at 160–61 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). But "[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969).

In this case, St. Martin's tendered checks to employees in an attempt to settle the case after Swope initiated her lawsuit. It is undisputed that Swope, Turner, and McDole's checks were never

cashed. The Supreme Court has explained that "an unaccepted set-tlement offer . . . does not moot a plaintiff's case." *Campbell-Ewald Co.*, 577 U.S. at 165. Thus, St. Martin's did not moot the case by offering a settlement to the employees. This is especially true in the context of FLSA claims, where proposed settlements must be ap-proved for fairness by the district court. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

St. Martin's mootness argument appears to rely, at least in part, on its assertion that the checks it issued to employees repre-sented full statutory relief. But mootness depends on whether we can provide redress, *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022), not whether a claim was improperly raised. Swope, Turner, and McDole sought summary judgment for the partial amount that St. Martin's agreed it owed, but the employees never agreed that the checks constituted *everything* that was owed to them. Thus, a live case or controversy existed as to the amount owed to Swope, Turner, and McDole under the FLSA.

St. Martin's contention that the case is moot because the three employees were the prevailing parties at summary judgment is likewise unavailing. The district court was tasked with determin-ing what St. Martin's owed to the employees. It found that the two retention bonuses were not properly pled in the amended com-plaint, and that even if they were, they were discretionary and thus excludable under the FLSA. Accordingly, the court held that "the checks that St. Martin's issued in September 2022 were for the cor-rect amount of overtime wages and liquidated damages due and

no plaintiff is entitled to a greater amount." We are thus able to grant relief to the employees as to the disputed amount of damages owed, should they prevail. Accordingly, the court's holding that there was no genuine issue of material fact as to whether Swope, Turner, and McDole were entitled to the amount that St. Martin's agreed it owed them does not make the case moot.

### 2. Swope's, Turner's, and McDole's Overtime-Pay Claims Were Not *De Minimis*

St. Martin's further argues that the district court erred in granting summary judgment to Swope, Turner, and McDole because their hazard pay FLSA claims are *de minimis*. This assertion is likewise unavailing.

Under the FLSA, an employer need not pay employees for otherwise compensable work if the time spent completing the work is *de minimis*. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *see also* 29 C.F.R. § 785.47 ("In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded."). This rule comes into play when there are "uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47. But this rule does not permit employers to "arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable

period of time he is regularly required to spend on duties assigned to him." 29 C.F.R. § 785.47.

St. Martin's does not argue on appeal that this case involves small, incalculable blocks of unrecorded time. Nor does it explain to the Court why such time need not be counted. Thus, we cannot fit the facts of this case into the narrow exception articulated in *Anderson* and § 785.47. However, St. Martin's does not limit its argument to the application of the statute. Rather, it urges us to find that the employees' claims are *de minimis* under common law and equitable doctrine. It argues that under *de minimis non curat lex*, this Court need not involve itself with "trifles" asserted by Swope, Turner, and McDole.

In *Sandifer v. U.S. Steel Corp.*, the Supreme Court acknowledged that some courts sought to "mitigate" the difficult task of applying the narrow exception articulated in *Anderson* "by invoking the doctrine *de minimis non curat lex* (the law does not take account of trifles)." 571 U.S. 220, 233 (2014). It noted that while "the roots of the *de minimis* doctrine stretch to ancient soil, its application in the present context began with *Anderson*." *Id.* The Supreme Court explained, however, that the doctrine itself "does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles." *Id.* at 234 (emphasis in original). Finally, the Court explained that post-*Anderson*, the Department of Labor has enacted regulations that are more stringent than those expressed in *Anderson*. *Id.* at 234 n. 8 (citing 29 C.F.R. § 785.47).

Under *Sandifer*, *Anderson*, and the Department of Labor's regulations, we cannot find that the *de minimis* common law doctrine applies to the facts of this case. If we were to hold that the employees' claims were *de minimis* based on common law principles, we would frustrate the purpose of the FLSA, which was created to protect the "trifles" St. Martin's asks us to ignore. *See Sandifer*, 571 U.S. at 234. This is not to say that this Court will never find FLSA claims to be *de minimis*—*Anderson* and its progeny very clearly carve out instances wherein that would be permissible. *See Anderson*, 328 U.S. at 692. But as we determined above, the facts of this case do not fit into those exceptions. Accordingly, we find that Swope's, Turner's, and McDole's claims are not *de minimis* and affirm the district court's summary judgment ruling in favor of these three employees.

B.    The District Court Did Not Err in Granting Summary Judgment for St. Martin's on the Remaining FLSA Overtime-Pay Claims

The resolution of the remaining claims for overtime wages and liquidated damages depends on whether the two retention bonuses should have been included in the overtime calculation. The district court held that St. Martin's exclusion of the retention bonuses was proper for two reasons. First, it determined that the retention bonuses were not pled in the complaint and the time to amend had passed. Second, it found that even if the retention bonuses were pled in the complaint, those bonuses were discretionary, such that they were excludable under Section 207(e)(3).

As to the first holding, the employees argue that while amendment through argument is generally improper, they were not attempting to assert a different theory of recovery at summary judgment. Rather, they state that it was not until discovery progressed that they learned the different terms St. Martin's used to refer to the Covid-19 premiums.

Our reading of the amended complaint indicates that Swope's claims for overtime underpayment were centered on the add-on pay (the extra $2 or $3 per hour during the pandemic) and the hazard pay (the extra $2 per hour for employees working in the Covid-19 ward). The amended complaint alleges that employees "were promised [Covid-19] Ward pay at a rate higher than their general rate of pay." Swope states that her base rate of pay was $11.40 per hour and that St. Martin's implemented a policy to pay employees "an additional $5.00 per hour," for working in the Covid-19 ward.[2] She states that she worked overtime at St. Martin's and that "many of those hours were worked at the [Covid-19] Ward rate of pay, which was at a rate of $16.40 per hour." She further alleges that "regardless of whether [she] was working in the [Covid-19] Ward when she worked overtime for Defendant, Defendant paid all of her overtime hours at an overtime rate based upon her lower $11.40 rate of pay."

_____

[2] The $5 total derives from combining the add-on pay ($3 per hour for Swope as a Certified Nursing Assistant) and the hazard pay ($2 per hour when working in the Covid-19 ward).

24-12984               Opinion of the Court                    19

Thus, Swope's amended complaint clearly makes allegations regarding St. Martin's failure to compensate her for the add-on pay and the hazard pay when calculating her overtime compensation. Swope's argument that she was not seeking to exceed the scope of her complaint because the amended complaint seeks to have all of the COVID premium pay offered by St. Martin's included in the calculation of the overtime pay falls short.

This is not a case wherein the complaint refers to the retention bonuses by the wrong title. The complaint says nothing about the two retention bonuses and mentioning them in motion practice does not amend the complaint. To do so, Swope would have needed to show good cause under Fed. R. Civ. P. 15(a). She never attempted to do so, and we cannot allow such an amendment now on appeal. *See Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 n.5 (11th Cir. 1982) (explaining that a party cannot raise new issues on appeal in the absence of a "miscarriage of justice").

Accordingly, we affirm the district court's holding in favor of St. Martin's on the remaining FLSA overtime-pay claims. Because we find the district court properly concluded that Swope failed to plead a claim for the retention bonuses, we do not reach the issue of whether those bonuses were discretionary and excludable.

C.    <u>The District Court Did Not Err in Granting Summary Judgment in Favor of St. Martin's on Swope's FLSA Claim for Unpaid Work Incurred During Lunch Breaks</u>

The district court held that even if Swope properly asserted a FLSA claim for her lunch break underpayment, summary judgment was nevertheless due for St. Martin's because Swope was unable to produce enough evidence showing the amount and extent of the work she performed for which she alleges she was improperly compensated. Swope argues this conclusion was error; we disagree.

"[I]n situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held 'that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Anderson* 328 U.S. at 687). If the plaintiff can meet her burden, the burden then shifts to the employer to "bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (citing *Anderson*, 328 U.S. at 687–88).

Assuming Swope sufficiently asserted an individual claim for automatic break deductions, she failed to meet her initial burden under *Allen*. Swope states that she has introduced evidence demonstrating that she worked through a lunch break for which she was not paid two or three times a week. She argues that this is enough to survive summary judgment. Not so fast. The testimony she cites

24-12984                Opinion of the Court                21

to on appeal illustrates our point. When asked how often she reported her interrupted meal breaks, she stated that "[i]t could have been like . . . I'm really not sure. Maybe two, three days out of the week." The district court correctly categorized this testimony as "speculative." Swope has not presented any evidence demonstrating how much of her unpaid breaks were spent working. She merely states that she is "really not sure," how many days a week her breaks were interrupted. This does not rise to the level of "sufficient evidence" that demonstrates "the amount and extent of [her] work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316.

Swope posits that she, as the non-movant, did not bear the burden at summary judgment. Generally, "[t]he moving party bears the burden of production." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (citing *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007)). If this burden is met, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Fickling*, 507 F.3d at 1304. But as this Court made clear in *Allen*, when employer records are unreliable, a FLSA plaintiff must at least show a genuine issue of material fact about "the amount and extent of her work." *Allen*, 495 F.3d at 1316. Swope has not met her burden under that standard to provide more than speculative evidence. Accordingly, the district court properly granted summary judgment in favor of St. Martin's on Swope's FLSA claim for unpaid overtime incurred during lunch breaks.

D.    <u>The District Court Did Not Err in Granting Summary Judgment for St. Martin's on Swope's FMLA Retaliation and Interference Claims</u>

Swope appeals the district court's summary judgment ruling in favor of St. Martin's on her individual FMLA retaliation and interference claim. Because we find that she never gave adequate notice to St. Martin's of her need for FMLA leave, we affirm.

### 1.    Interference

The FMLA allows employees to take leave for a variety of reasons, including to care for a parent suffering from serious health challenges. 29 U.S.C. § 2612(a)(1)(C). The Act makes clear that "a covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of her FMLA rights to coverage, leave entitlement, notice, benefits continuation, and job restoration." *Ramji*, 992 F.3d at 1241 (citing 29 U.S.C. § 2615(a)(1); 29 U.S.C. §§ 2601–2654; 29 C.F.R. §§ 825.100–825.803)).

An FMLA interference claim requires the employee to show both that she was entitled to leave under the FMLA and that her employer denied or interfered with that leave. *Id.* at 1242; *see Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274 (11th Cir. 2020). An employee establishes that she was entitled to take leave under the FMLA by showing "she sought leave for a qualifying reason" and gave adequate notice under the statute. *Ramji*, 992 F.3d at 1242. There is no dispute that St. Martin's is covered by the FMLA and that Swope is eligible for FMLA leave. The parties further appear

to be in agreement that Swope was qualified to take leave under the Act to care for her mother. Accordingly, we turn first to notice.

"An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015). We review first whether the content of Swope's notice was sufficient under the Act.

While an employee is not required to mention the FMLA when providing notice to her employer, 29 C.F.R. § 825.301(b), the content and information she must provide depends on whether the need for leave is foreseeable or unforeseeable. *Ramji*, 992 F.3d at 1243. If it is foreseeable that the employee will need to take leave, notice must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and [of] the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). If it is unforeseeable, the employee only needs to "provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* at § 825.303(b).

Swope met with St. Martin's staff on August 23, 2021, regarding her purported request for leave. Her mother's kidney transplant took place more than a month prior on July 12, 2021. We have noted before that "an employee's need for leave is foreseeable if it is based on planned medical treatment." *White*, 789 F.3d at 1196. Here, Swope's mother had a planned surgery that took place a

month before she gave notice to St. Martin's. Further, there is nothing in the record suggesting that Swope's mother experienced any unforeseen medical complications or emergencies following the surgery. We thus find that her need for leave was foreseeable, such that she was required to make St. Martin's aware of "the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

Swope submitted a written letter to St. Martin's that stated: "I Nyesha Swope as of today 8/23/2021 I'm putting in my two weeks notice to go PRN. Thanks for the opportunity to work with you guys and I hope you all understand. Thanks in advance." She further met with the St. Martin's human resources representatives and told them that she wanted to "take some time off" and transfer to as-needed status to care for her mother.

Construing these statements as a request for leave, we find that the content of Swope's request was insufficient under the Act. These statements perhaps made St. Martin's aware that Swope's need qualified under the FMLA and that the anticipated timing of her leave was in two weeks. They fail, however, to provide St. Martin's with the approximate duration of her requested leave. Stating that she needed to take "some time off" is insufficient under the FMLA's requirements. Accordingly, her notice was inadequate, and the district court properly granted summary judgment in favor of St. Martin's on her interference claim.

### 2.    Retaliation

As for Swope's retaliation claim, our holding is the same. Adequate notice is a necessary element of retaliation under the FMLA

24-12984            Opinion of the Court                    25

when an employee's need for leave is foreseeable. *See White*, 789 F.3d at 1196. Because Swope's need for leave was foreseeable, and because she failed to include the anticipated duration of her leave, we affirm the district court's ruling in favor of St. Martin's on Swope's retaliation claim.

## V.     CONCLUSION

We find no error in the district court's rulings.

**AFFIRMED.**